586 A.2d 450

COMMONWEALTH of Pennsylvania

v.

Ricki Lynne BLEIGH, Appellant.

COMMONWEALTH of Pennsylvania

v.

Virginia Lee SHIPE, Appellant.

COMMONWEALTH of Pennsylvania

v.

John Andrews THOMPSON, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 13, 1990.

Decided Jan. 9, 1991.

Reargument Denied Feb. 15, 1991.

170

Michael E. Brunnabend, Public Defender, Allentown, for Bleigh, Shipe and Thompson, appellants.

Syndi L. Norris, Asst. Dist. Atty., Carlisle, for Com., appellee.

Before CIRILLO, President Judge, and JOHNSON and BROSKY, JJ.

CIRILLO, President Judge:

Ricki Lynne Bleigh, Virginia Lee Shipe, and John Andrews Thompson appeal from judgments of sentence entered on January 11, 1990 in the Cumberland County Court of Common Pleas. We affirm in part and vacate in part.

On October 13, 1988, Detective Michael Strine entered an adult bookstore. Upon entry, Detective Strine observed an array of sexually oriented materials including magazines, movies, and various devices. Additionally, the bookstore had booths available where patrons could view sexually explicit movies or, if they desired, a live female dancer. The booths contained a telephone, a waste can, and a roll of toilet paper. The patrons and the dancers were separated by a pane of glass. As such, they communicated by phone.

Detective Strine entered a booth and placed money into a machine which opened a curtain and exposed Shipe draped in lingerie. Shipe informed Detective Strine that the curtain would remain open for five minutes and that if he placed five dollars through a slot in the wall marked "tips," she would take off her top, for ten dollars she would remove all her clothing and for twenty dollars she would put on a "show." Detective Strine placed twenty dollars through the slot and Shipe removed all of her clothing and masturbated.

Later that same evening, Chief Barry Sherman of the Middlesex Township Police went to the same establishment, entered a private booth, placed twenty dollars through the slot and viewed Bleigh masturbate in the nude. Based upon this information, the police obtained a search warrant

authorizing the seizure of "any and all sexually oriented materials, including magazines, movies, sexual devices, records of ownership/occupancy/employment, any cash monies or proceeds derived from the sale of said material, and/or sexual activity." On October 14, 1988, the police executed the search warrant. Upon entering the building, which was open to the public at the time, they immediately arrested Thompson, who was working at the front counter. The police also arrested Shipe who was found in one of the booths, and Bleigh who was in the basement with her husband. A search of Shipe's pocketbook revealed the marked twenty dollar bill paid to her by one of the officers, a quantity of cocaine and drug paraphernalia. Additionally, a search of Bleigh's pocketbook following her arrest revealed the marked twenty dollar bill which had been paid to her by Chief Sherman the previous day. The police also observed Thompson's briefcase, and after searching it, discovered, among other things, a quantity of cocaine.

After a jury trial Bleigh was convicted of prostitution. Shipe was convicted of prostitution, unlawful possession of a controlled substance, and unlawful possession of drug paraphernalia. See 35 P.S. § 780-113. Thompson was convicted of promoting prostitution, unlawful possession of a controlled substance, and unlawful possession of drug paraphernalia. The defendants' post-verdict motions were denied, sentence was imposed and this timely appeal followed.

The appellants' advance the following issues for our review:

I. (a) Does self-masturbation or simulated self-masturbation for hire constitute "prostitution" pursuant to 18 Pa.C.S. Section 5902(a); and if so, is Section 5902 constitutionally valid as applied in this case?

(b) Was the evidence sufficient to sustain the Trial Court's failure to quash and/or dismiss the charge of promoting prostitution ... against Mr. Thompson?

II. Was the search warrant which permitted the search and seizure of various items located in an adult bookstore invalid due to vagueness or overbreadth?

III. (a) Did the police, in executing a search warrant, commit an illegal search by failing to "knock and announce" as required?

(b) Did the police illegally search and seize various personal property from individuals pursuant to a search warrant?

■ We are called upon once again to clarify what actions constitute the crime of prostitution in this Commonwealth. Specifically, we must determine if self-masturbation for hire with no physical contact between patron and performer constitutes prostitution. The legislature has provided:

(a) Prostitution—a person is guilty .of prostitution; a misdemeanor of the third degree, if he or she:

(1) is an inmate of a house of prostitution or *otherwise engages in sexual activity as a business;* ...

18 Pa.C.S. § 5902(a) (emphasis added). Section 5902(f) states that sexual activity includes homosexual and other deviate sexual relations. 18 Pa.C.S. § 5902(f). Clearly, however, the conduct described in section 5902(f) is not the only activity that constitutes prostitution. *See Commonwealth v. Cohen,* 371 Pa.Super. 558, 538 A.2d 582 (1988); *Commonwealth v. Robbins,* 358 Pa.Super. 225, 516 A.2d 1266 (1986).

Since the term "sexual activity" is neither specifically nor exhaustively defined in the prostitution statute, we must construe the term according to its common and approved usage. 1 Pa.C.S. § 1903(a); *Robbins,* 358 Pa.Super. at 230–32, 516 A.2d at 1269. Consequently, it is necessary to trace the history and development of the prostitution statute. *See Commonwealth v. Potts,* 314 Pa.Super. 256, 460 A.2d 1127 (1983).

In *Commonwealth v. Lavery,* 247 Pa. 139, 142, 93 A. 276, [277–78] (1915), our Supreme Court said that prostitution was "not mere fornication or adultery confined to one man, but indiscriminate illicit intercourse for hire with any man seeking it," but in *Commonwealth v. Stingel,* 156 Pa.Super. 359, 361, 40 A.2d 140, 141 (1944),

this Court held that "indiscriminate cohabitation" was no longer necessary, since "the Legislature ha[d] broadened the compass of the term" by the Act of June 24, 1939, P.L. 872, § 103; 18 Pa.C.S. § 4103. "Prostitution" was there defined as "offering or using of the body for sexual intercourse for hire." Also, in this Commonwealth's statutes (e.g., the Act of June 30, 1923, P.L. 982 and the Act of June 24, 1939, P.L. 872), the word "fornication" was dropped from the language of the sections relating to similar offenses. *Commonwealth v. Robertson*, 178 Pa. Super. 281, 286, 116 A.2d 224, 227 (1955); *Commonwealth v. Dougan*, 5 D. & C.3d 406, 408 (1978).

In the present Act [18 Pa.C.S. § 5902], the Legislature did not eradicate the commonly understood definition of prostitution but merely clarified it to include "homosexual and other deviate sexual relations." *Id.; see Commonwealth v. Miller*, 469 Pa. 24, 28, 364 A.2d 886, 887 (1976).

It cannot be gainsaid that "prostitution" has persisted since Biblical times, and, as such, *has acquired a traditional meaning, i.e. "indiscriminate illicit intercourse for hire."*

. . . . .

*Potts*, 314 Pa.Super. at 270–71, 460 A.2d at 1134 (citations omitted, emphasis added). In *Potts*, this court concluded that section 5902 was not unconstitutionally vague; rather, the court found it provided an ascertainable standard of conduct directed at a defined evil—the commercial exploitation of sexual gratification. *Id.*, 314 Pa.Superior Ct. at 273–75, 460 A.2d at 1136. Other evils designed to be eradicated by the criminalization of prostitution are the spread of venereal disease; the corruption of law enforcement agencies; the incentive to coerce and exploit women; and criminal organizations living on the proceeds of prostitution. *See Commonwealth v. Dodge*, 287 Pa.Super. 148, 429 A.2d 1143 (1980).

As the court in *Potts* stated, prostitution or sexual activity as a business, "has traditionally meant sexual intercourse for hire." *Id.* Sexual intercourse, however, is not the only sexual activity proscribed by section 5902.

In *Cohen* and *Robbins,* this court held, after examining the statute's purpose, that the masturbation of a male by a female for money was sexual activity as a business and therefore prostitution. *Cohen,* 371 Pa.Super. at 560–62, 538 A.2d at 583; *Robbins,* 358 Pa.Super. at 228–30, 516 A.2d at 1268. In both cases, as in *Potts,* the court also found that section 5902 was not unconstitutionally vague. *Cohen, supra; Robbins, supra.*

Here, the Commonwealth argues that because Shipe and Bleigh engaged in self-masturbation for the sexual gratification of their customers, it was sexual activity as a business and therefore prostitution. We disagree.

Having examined the evolution of the term prostitution, and the cases interpreting it, we conclude that self-masturbation for hire without any physical contact between performer and viewer is not the type of conduct intended to come within the purview of section 5902. Further, the definition of sexual activity in section 5902(f) states that it "includes homosexual and other deviate sexual *relations.*" 18 Pa.C.S. § 5902 (emphasis added). This clarification, while not controlling, indicates that sexual activity requires the physical interaction of two or more people. Here, there was no physical interaction between the dancers and the patrons. As such, this conduct is more akin to commercial voyeurism; it is not, however, prostitution. Consequently, Bleigh's and Shipe's judgments of sentence for prostitution must be reversed.[1]

Likewise, since Thompson's conviction for promoting prostitution was based upon the actions of Bleigh and Shipe, his judgment of sentence is also reversed. *See* 18 Pa.C.S. § 5902(b). Clearly, if the activities promoted do not amount to prostitution, Thompson cannot be guilty of promoting prostitution.

■ The appellants next claim that the officers violated the "knock and announce" rule by simply entering the

---

1. Having concluded that the instant prostitution convictions must be reversed, we need not determine whether, under the circumstances of this case, the application of section 5902 is constitutionally valid.

premises. *See* Pa.R.Crim.P. 2007; *Commonwealth v. Morgan*, 517 Pa. 93, 534 A.2d 1054 (1987). However, since the appellants did not include this issue in their post-verdict motions, it is waived. Pa.R.Crim.P. 1123(c)(3).

 Lastly, we will simultaneously address the appellants' contentions that the search warrant was impermissibly vague and overbroad, not based upon probable cause, and that the searches of Shipe's pocketbook and Thompson's briefcase were invalid.

The Fourth Amendment of the United States Constitution requires that "no warrants shall issue, but upon probable cause ... and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. Similarly, the Pennsylvania Constitution states that "no warrant to search a place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause." Pa. Const. art. 1 § 8. The major purpose of the particularity requirement is to prevent general searches. "This requirement ensures that the search will be carefully tailored ... and will not take on the character of the wide-ranging exploratory searches the Framers [of the United States Constitution] intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72, 80 (1987).

*Commonwealth v. Reese*, 520 Pa. 29, 32, 549 A.2d 909, 910 (1988). Probable cause exists for the issuance of a search warrant where there is a reasonable belief that objects related to suspected criminal activity will be discovered at the place to be searched. *Commonwealth v. Barba*, 314 Pa.Super. 210, 215–16, 460 A.2d 1103, 1106 (1983). Here, based upon the affiant's personal observations, it is clear that a reasonable belief existed that objects related to prostitution, the *suspected* criminal activity, would be discovered at the named premises. Therefore, the issuance of the search warrant was based upon probable cause. *Reese, supra; Barba, supra.* Further, our review of the search warrant leads us to conclude that it adequately described

the place to be searched and things to be seized. *Reese, supra.*

 We now must decide whether the searches of Shipe's pocketbook and Thompson's briefcase were valid. While the officers were executing the instant search warrant, they discovered drugs and drug paraphernalia in Shipe's pocketbook and Thompson's briefcase. It is clear that

> [w]here a search warrant adequately describes the place to be searched and the persons and/or things to be seized, the scope of the search "extends to the entire area in which the object of the search may be found" and properly includes containers and other receptacles where the object may be secreted. *United States v. Ross*, 456 U.S. 798, 820–821, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982).

*Reese*, 520 Pa. at 33, 549 A.2d at 911. Here, since the warrant was sufficiently particular and because sexual materials and proceeds of sexual activity, namely marked currency, could have been contained in Shipe's pocketbook and Thompson's briefcase, the police had authority to search those items. *Id.* We therefore conclude that the searches of Shipe's pocketbook and Thompson's briefcase were valid, *id,* and that the drugs and drug paraphernalia discovered in those containers were in the plain view of the officers. "For the plain view doctrine to apply three elements must be satisfied: 1) the initial intrusion must be lawful; 2) observation of the item must be inadvertent; and 3) there must be probable cause to link the observed property with criminal activity." *Commonwealth v. Davidson*, 389 Pa.Super. 166, 175, 566 A.2d 897, 901 (1989) (quoting *Commonwealth v. Pine*, 370 Pa.Super. 410, 419, 536 A.2d 811, 816 (1988)).

The initial intrusion into the respective containers was lawful pursuant to the valid search warrant. The officers inadvertently observed the drugs and drug paraphernalia while searching the containers for sexual devices, materials or proceeds which could have been secreted in the respective receptacles. *Reese, supra.* Lastly, since the mere

possession of drugs is a criminal activity, probable cause existed to link the drugs and drug paraphernalia to criminal activity. *Davidson,* 389 Pa.Super. at 174–75, 566 A.2d at 901. Thus, the drugs and drug paraphernalia found in Shipe's pocketbook and Thompson's briefcase were clearly admissible at trial pursuant to the plain view doctrine. *Id.*

Since Shipe ·was sentenced to concurrent terms for prostitution, unlawful possession of a controlled substance, and unlawful possession of drug paraphernalia, we vacate the judgment of sentence for prostitution and affirm the judgments of sentence for possession of a controlled substance and for possession of drug paraphernalia. Likewise, since Thompson was sentenced to concurrent terms of imprisonment for promoting prostitution, possession of a controlled substance, and unlawful possession of drug paraphernalia, we vacate the judgment of sentence for promoting prostitution and affirm the judgments of sentence for unlawful possession of a controlled substance and unlawful possession of drug paraphernalia. *See Commonwealth v. Johnston,* 348 Pa.Super. 160, 501 A.2d 1119 (1985); *Commonwealth v. Eberts,* 282 Pa.Super. 354, 422 A.2d 1154 (1980).

Affirmed in part; vacated in part.