658 A.2d 416

COMMONWEALTH of Pennsylvania

v.

Frank DeSTEFANIS, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 9, 1995.

Filed May 11, 1995.

56

Francis Recchuiti, Norristown, for appellant.

Stephen B. Harris, Asst. Dist. Atty., Warrington, for Commonwealth, appellee.

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

CIRILLO, Judge:

Frank DeStefanis appeals from a judgment of sentence entered in the Court of Common Pleas of Bucks County following his conviction of two counts of promoting prostitution and one count of conspiracy. We reverse.

On February 16, 1993, Detective Timothy Carroll of the Bensalem Township Police Department went to the Executive Fitness Center in Bristol Borough as part of an undercover operation. Detective Carroll paid Jessica Vanderburg ("Alexis") $60.00 for a body massage. Ms. Vanderburg massaged Detective Carroll's feet, legs, arms, back, and chest. Toward the completion of the massage, Ms. Vanderburg asked if Detective Carroll wanted a "hand release." When Detective Carroll asked about the meaning of a hand release, Ms. Vanderburg indicated that it meant a "hand job." Detective Carroll determined that she was referring to manual stimulation of the genitals, and inquired about the price of a hand release. Ms. Vanderburg told him that a tip would be appreciated. She also indicated that only a hand release was available, as opposed to oral sex or other sexual activity. Detective Carroll told Ms. Vanderburg that he was not interested in a hand release.

On March 3, 1993, Detective Carroll returned to the Executive Fitness Center and was this time met by a woman who identified herself as "Madison" (Beata Grama). Detective Carroll paid $65.00 and received a massage. After the completion of the massage, Detective Carroll told Ms. Grama that he had spoken to Alexis, and was interested in the availability of specific sexual acts other than a hand release. Ms. Grama indicated that it was the "house rule" that only hand releases would be performed, nothing else. Detective Carroll did not receive a hand release.

On June 23, 1993, Officer Libby Hagger of the Morrisville Borough Police Department went to the Executive Fitness Center and, as part of the undercover investigation, interviewed for a position as a masseuse. There she met Appellant Frank DeStefanis. During the interview, DeStefanis instruct-

ed Officer Hagger to put her handbag in an adjoining room, and to remove her clothing to make sure she was not "wired" with a recording device. DeStefanis stated that he did not want to have any problems with the police. Officer Hagger removed her shirt for this purpose. In fact, the conversation was recorded by Detective Robert Potts of the Bucks County District Attorney's Office using a remote transmitter placed in Officer Hagger's handbag. The tape was later played for the jury and transcribed. During their conversation, Officer Hagger asked DeStefanis if "he had a problem with . . ." and then made a gesture indicating a hand release. The following dialogue was exchanged:

DESTEFANIS: That's up to you. You talking about a hand release?

HAGGER: Yeah.

DESTEFANIS: That's up to you, but I don't think anybody's doing that.

HAGGER: OK. But that is acceptable . . . to make more money, that would be one of my options then?

DESTEFANIS: Yes.

DeStefanis also told her that "the rules" included no sexual intercourse (including oral and anal sex). DeStefanis reiterated that there was strictly "no sex" allowed approximately nine times during the taped conversation, and mentioned at least twice that he would be "checking" on Hagger. Additionally, DeStefanis informed Hagger that she would receive $20.00 for each hour (presumably for each massage), plus tips. When asked by Hagger if she was able to keep her tips, DeStefanis replied, "I don't touch any of your money. . . . Everyone keeps their own tips."

About one month after the interview, officers from the Bristol Borough Police Department arrested DeStefanis, Ms. Vanderburg, and Ms. Grama. Detective Potts interviewed Ms. Vanderburg, who admitted to giving hand releases to a few of her customers. Specifically, she related to Officer Potts how much money she made per week and that she was able to keep her tips. Additionally, Officer Randy Morris

spoke with Ms. Grama, who also admitted performing hand releases on some customers, but did not perform oral sex and/or other "full service" sex.

A jury trial was held on December 13, 1993, and DeStefanis was convicted of two counts of promoting prostitution and one count of conspiracy. Post-verdict motions were filed and denied. DeStefanis was sentenced to thirty days to twenty-three months imprisonment, and was directed to pay a $2,500.00 fine. This appeal followed.

DeStefanis raises the following issues for our consideration:
(1) Was the evidence in this case insufficient to establish criminal activity because:

(a) Solicitation and prostitution are separate and distinct offenses and no act constituting prostitution took place?

(b) Masturbation does not constitute sexual activity within the meaning of the prostitution statute?

(c) The evidence was insufficient to connect DeStefanis to any act of prostitution?

(2) Did the court err when it admitted testimony about statements and confessions made by defendants when the corpus delicti of prostitution had not been established?

(3) Did the court err and abuse its discretion in permitting witnesses to express an opinion that a gesture made meant male masturbation, while refusing to permit the gesture to be either shown or described?

In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Jarman*, 529 Pa. 92, 94–95, 601 A.2d 1229, 1230 (1992); *Commonwealth v. Swann*, 431 Pa.Super. 125, 635 A.2d 1103 (1994). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Com-*

*monwealth v. Swerdlow,* 431 Pa.Super. 453, 458, 636 A.2d 1173, 1176 (1994) (citing *Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988)). *See also Commonwealth v. Chmiel,* 536 Pa. 244, 639 A.2d 9 (1994). Furthermore, it matters not whether the appellant finds a witness's testimony lacking in credibility; such matters are solely within the province of the jury as trier of fact and, as such, will not be assailed on review by this court. *Swerdlow, supra,* 431 Pa.Super. 453, 636 A.2d 1173.

In claiming that his verdict was not supported by sufficient evidence, DeStefanis first contends that the offenses in question do not constitute prostitution. The offense of prostitution is defined under 18 Pa.C.S.A. § 5902(a):

(a) **Prostitution.**—A person is guilty of prostitution; a misdemeanor of the third degree, if he or she:

(1) is an inmate of a house of prostitution *or otherwise engages in sexual activity as a business;* . . . .

18 Pa.C.S.A. § 5902(a)(1), (2) (emphasis added).[1] The offense of promoting prostitution is defined under 18 Pa.C.S.A. § 5902(b):

(b) **Promoting prostitution.**—A person who knowingly promotes prostitution of another commits a misdemeanor or felony as provided in subsection (c) of this section. The following acts shall, without limitation of the foregoing, constitute promoting prostitution:

(1) owning, controlling, managing, supervising or otherwise keeping, alone or in association with others, a house of prostitution or a prostitution business;

\* \* \* \* \* \*

18 Pa.C.S.A. § 5902(b)(1).

█ In order for the conviction of promoting prostitution to be sustained, this court must be assured that the evidence was sufficient to convince the jury beyond a reasonable doubt that the Commonwealth proved: (1) that there was a prostitution business; and (2) that the accused had a connection with the

1. "Sexual activity," as defined in the statute, "[i]ncludes homosexual and other deviate sexual relations." 18 Pa.C.S.A. § 5902(f) (definitions).

"running, control, supervision or keeping of the prostitution business." 18 Pa.C.S.A. § 5902(b). *Commonwealth v. Blank-enbiller*, 362 Pa.Super. 477, 480, 524 A.2d 976, 978 (1987). Thus, in determining whether the evidence is sufficient to sustain DeStefanis' conviction for promoting prostitution, and since DeStefanis' conviction is based on the actions of Ms. Vanderburg and Ms. Grama, it is first necessary to determine whether the activities allegedly promoted did indeed rise to the level of a prostitution business.

■ The prostitution statute, 18 Pa.C.S.A. § 5902, was enacted to provide an ascertainable standard of conduct directed at a defined evil, such evil being the commercial exploitation of sexual gratification. *Commonwealth v. Potts*, 314 Pa.Super. 256, 273–75, 460 A.2d 1127, 1136 (1983); *accord Commonwealth v. Bleigh*, 402 Pa.Super. 169, 172–76, 586 A.2d 450, 452–53 (1991); *Commonwealth v. Robbins*, 358 Pa.Super. 225, 230–32, 516 A.2d 1266, 1269 (1986).[2] Prostitution has persisted since biblical times and has traditionally been viewed as sexual intercourse for hire. *Potts, supra,* 314 Pa.Super. 256, 460 A.2d 1127; *see also Bleigh, supra,* 402 Pa.Super. 169, 586 A.2d 450. In the present statute, the legislature did not eradicate the commonly understood definition of prostitution, but, rather, clarified it to include "homosexual and other deviate sexual relations." *Potts, supra,* 314 Pa.Super. 256, 460 A.2d 1127; 18 Pa.C.S.A. 5902(f).

■ Since *Potts,* the appellate courts of this Commonwealth have made it clear that intercourse is not the only sexual activity condemned by section 5902. In *Commonwealth v. Cohen,* 371 Pa.Super. 558, 538 A.2d 582 (1988), and *Robbins, supra,* 358 Pa.Super. 225, 516 A.2d 1266, this court held, after examining the statute's purpose, that the masturbation of a male by a female for money was sexual activity as a business and, therefore, prostitution. In both *Cohen* and *Robbins,* the appellants were owners and/or operators of establishments where massages were performed by women who, in the course

2. Other evils aimed at being abolished by the criminalization of prostitution include the spread of sexually transmitted disease, the corruption of law enforcement agencies, the incentive to exploit women, and criminal organizations living on the proceeds of prostitution. *Bleigh,* 402 Pa.Super. at 174–76, 586 A.2d at 453; *see Commonwealth v. Dodge,* 287 Pa.Super. 148, 429 A.2d 1143 (1981).

of massaging their male clients, performed "hand releases" on the men's genitalia.

> [S]ince the term "sexual activity" is undefined by statute, we are obliged to construe that term according to its common and approved usage. When the term "sexual activity" is examined in light of the statute's underlying purpose of prohibiting commercial exploitation of sexual gratification and also in light of its common and approved usage, there is no doubt that masturbation for hire falls within the statute's proscription.

*Cohen,* 371 Pa.Super. at 563, 538 A.2d at 584 (quoting *Robbins,* 358 Pa.Super. at 230, 231, 516 A.2d at 1269 (citations omitted)).[3]

*Cohen* and *Robbins* have made it clear that prostitution, or "sexual activity as a business," includes "masturbation as a business" or, stated otherwise, "manual sexual stimulation for the payment of money" and "masturbation for hire." *Cohen,* 371 Pa.Super. at 560–64, 538 A.2d at 583–84; *Robbins,* 358 Pa.Super. at 228–32, 516 A.2d at 1268–69. Thus, in order for there to be prostitution, there must not only be sexual activity (*i.e.,* manual sexual stimulation), but a payment of money as well, in other words, "a prostitution business." 18 Pa.C.S.A. § 5902(b)(1). "This court has found that a 'business' is 'a commercial activity engaged in for gain.'" *Blankenbiller,* 362 Pa.Super. at 480–82, 524 A.2d at 978 (quoting *Potts,* 314 Pa.Super. at 271, 460 A.2d at 1135). In both *Cohen* and *Robbins,* the massages given by the nude or semi-nude female masseuses to the male customers *included* masturbation of the male genitalia for a set fee; it was part of the "business." There is no question, therefore, that such conduct satisfied that proscribed by section 5902.

In the instant case, there is no question that a hand release, which constitutes sexual activity under the statute,

---

**3.** We note that these cases are distinguishable from *Bleigh, supra,* 402 Pa.Super. 169, 586 A.2d 450, where this court found that dancing girls' *self-masturbation* for the sexual gratification of their customers was not prostitution and, therefore, the dancing girls' manager was not promoting prostitution.

was available to, at the very least, Detective Carroll.[4] The more uncertain question is whether the actions of Ms. Vanderburg and Ms. Grama constituted manual sexual stimulation *for a business.* A review of the record indicates that there is insufficient evidence of the existence of a "prostitution business," (*i.e.* "sexual activity as a business") to sustain DeStefanis' conviction of promoting prostitution.

■ Detective Carroll's testimony reveals that the fitness center charged $60.00–$65.00 up front for a legitimate massage. The evidence further revealed that, after the completion of his first massage, Detective Carroll was made aware that a hand release was available by Ms. Vanderburg. When Detective Carroll inquired about the price of a hand release, the vague response was, "a tip would be appreciated." Arguably, when a client does not agree to pay for a sexual service up front, the ensuing act constitutes sexual activity between two consenting adults. Ms. Grama, Detective Carroll's second masseuse, did not even make Detective Carroll an offer of any type of sexual activity; it was not until the massage was completed and Detective Carroll initiated inquiries to Ms. Grama about sexual options that she spoke about hand releases. There can be no assumption, therefore, that a hand release was included in the price of the massage. No price was discussed with Ms. Grama. The fact that DeStefanis indicated to Officer Hagger that providing hand releases was an acceptable way to make "tips" is not probative of a prostitution "business," nor are the admissions of Ms. Vanderburg and Ms. Grama that they gave hand releases to some of their customers. This evidence, even when viewed in the light most favorable to the Commonwealth, is not sufficient to establish the "business" element of the prostitution statute beyond a reasonable doubt, specifically, that there existed "a commercial activity engaged in for gain." *Jarman, supra,* 529 Pa. 92, 601 A.2d 1229. "While a criminal conviction may rest upon wholly circumstantial evidence, it may not be based upon mere surmise or conjecture." *Blankenbiller,* 362 Pa.Super. at 481,

4. We note that it is the mere *offer* that is important for purposes of prostitution; no actual touching need be proven. *See Commonwealth v. Danko,* 281 Pa.Super. 97, 421 A.2d 1165 (1980).

64

524 A.2d at 978 (citing *Commonwealth v. Stores,* 317 Pa.Super. 109, 117, 463 A.2d 1108, 1112 (1983)). Because no underlying "prostitution business" has been established, DeStefanis cannot be said to have promoted prostitution under section 5902(b) and, therefore, his conviction must be reversed.

██ By way of dicta, we also find that the evidence was insufficient to prove that DeStefanis had a connection with the "running, control, supervision, or keeping of the prostitution business." [5] 18 Pa.C.S.A. § 5902(b); *Blankenbiller, supra,* 362 Pa.Super. 477, 524 A.2d 976. In *Blankenbiller,* this court found insufficient evidence to sustain a conviction for promoting prostitution. There, the appellant was the president/director of the company that owned the property where prostitution took place. Part of this court's focus in determining that the appellant did not promote prostitution was the appellant's lack of earnings from the business. "Though it is clear that a prostitution business was operating at the date and time in question, the Commonwealth did not prove that the appellant received any income from the business." *Blankenbiller,* 362 Pa.Super. at 481, 524 A.2d at 978. Here, even had we found that a prostitution business was in place, there was no evidence that DeStefanis received income from such a business. This is especially true in light of DeStefanis' statements to Officer Hagger that he did not think anyone was providing hand releases, and that he did not share any portion of the employees' tips.

Because we have determined that DeStefanis' conviction shall be reversed, we need not address the remaining issues on appeal.

Judgment of sentence reversed.

OLSZEWSKI, J., files a dissenting opinion.

5. For purposes of this argument, we must assume that there was a prostitution business in place, even though we have already determined that there was not.

OLSZEWSKI, Judge, dissenting:

Since I believe that the evidence was sufficient to support appellant's conviction, I must respectfully dissent.

In reviewing the sufficiency of the evidence, an appellate court must determine "whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all the elements beyond a reasonable doubt." *Commonwealth v. Howard*, 538 Pa. 86, 91, 645 A.2d 1300, 1303 (1994).

The majority found that the evidence was legally insufficient to prove the business element of promoting prostitution. As used in the prostitution statute, the term "business" has been defined as "commercial activity engaged in for gain." *Commonwealth v. Potts*, 314 Pa.Super. 256, 271, 460 A.2d 1127, 1135 (1983). Thus, the Commonwealth must produce evidence that will prove the existence of certain activity, commercial rather than personal in nature, that was performed in anticipation of some type of payment or benefit. In each of the two undercover massage incidents in this case, an employee offered a certain sexual service to a stranger/customer along with vague representations about price. In light of all of the evidence and the given context, I simply cannot agree with the majority that this is arguably a consensual sexual act between two adults, rather than a business transaction.

Regarding the first undercover massage, every aspect of this encounter reinforces the notion of a commercial and fee-oriented service relationship. It certainly began as a service relationship when Detective Carroll paid for a massage. After the massage, the masseuse, Ms. Vanderburg, did not indicate that she had any particular affinity for Carroll, or that she was in any way seeking a social relationship. Instead, she continued to act as a provider of services by notifying Carroll that "hand releases" were available. When he inquired about other sexual options, Ms. Vanderburg responded that only "hand releases" were available, as opposed to "full service" or oral sex. She also indicated that a number of other customers

took advantage of the "hand release" service. This is simply not the kind of language used by a social partner, but rather is the kind of language used by a provider of services discussing available options.

Ms. Vanderburg's response to Carroll's price inquiry, that tips would be appreciated, further reinforced the notion of a service rather than a social relationship. It is of no consequence that Ms. Vanderburg did not give a specific price or demand payment up front. By responding to the price inquiry with a reference to a type of payment, she clearly indicated that the service was not being performed for free.[1] The facts of this encounter simply do not lend themselves to the conclusion that this was a social relationship between consenting adults; rather the facts indicate that these services were being offered commercially, in anticipation of some type of payment or benefit.

Similarly, the evidence regarding the second undercover massage reveals the same kind of service-oriented relationship. Once again, Detective Carroll paid a stranger for a massage. At the completion of the massage, Carroll asked about additional sexual options. In response, Ms. Grama explained that house rules prohibited any service other than a "hand release," which was available. In this encounter, there was no discussion of price because Carroll had indicated that he was not interested in the "hand release." As in the first incident, the masseuse indicated that many customers took advantage of the "hand release" service.

Based on the evidence obtained in these two encounters, I would find that a reasonable inference could be drawn that the two masseuse/employees were regularly and commercially offering a sexual service to customers in anticipation of payment or benefit; stated another way, that they were engaged in commercial activity for gain.

1. It is true, as the majority notes, that Ms. Vanderburg was not clear about whether the "hand release" was included in the price of the massage. For the purposes of finding the existence of an underlying prostitution business, however, it is irrelevant whether the "hand release" service was included or offered "a la carte," so long as it was offered for a fee.

Since the underlying actions constitute a prostitution business, I must next examine appellant's relationship to that business. One of the statutory definitions of promoting prostitution is "owning, controlling, managing, supervising, or otherwise keeping ... a prostitution business." 18 Pa.C.S.A. § 5902(b)(1). Citing *Commonwealth v. Blankenbiller*, 362 Pa.Super. 477, 524 A.2d 976 (1987), *appeal denied*, 517 Pa. 591, 535 A.2d 81 (1987), the majority found that the evidence was insufficient to establish that appellant owned, controlled, managed, supervised, or otherwise kept a prostitution business. I disagree.

In *Blankenbiller*, this Court found the evidence insufficient to connect a corporate officer to a prostitution business operating at a party on corporate property. *Id.* at 482–84, 524 A.2d at 979. In discussing the weakness of the evidence, the *Blankenbiller* Court noted that although the officer promoted and attended the party, he was not automatically liable for everything that occurred there. *Id.* Since there was no evidence that the officer planned, arranged, or took part in the illicit activities, or that he received any income from the operation of the business, he could not be found guilty of owning, controlling, managing, supervising, or keeping a prostitution business. *Id.*

The circumstances of the instant case differ markedly from those in *Blankenbiller*. As an initial matter, I note that the illicit activity in *Blankenbiller* occurred at a party, while the activities at issue here were a regular and integral part of appellant's business. Common sense dictates that we require more oversight and diligence from a business owner running his daily operations than from a party-going corporate officer who attends an event on corporate property.

Secondly, the corporate officer in *Blankenbiller* did not plan, organize, or otherwise take part in the illicit activity that occurred at the party. In contrast, appellant took a very active part in planning and organizing his business. During the job interview with undercover Officer Libby Hagger, appellant informed her of a detailed set of house rules, the most significant of which was the rule prohibiting intercourse.

Appellant made it very clear that he would be checking on his employees to be sure that they followed this rule. In the same interview, appellant explicitly stated that "hand releases" were allowed. These clear rules given to a prospective employee indicate that appellant was actively involved, as a business owner should be, in determining what would and what would not take place in his establishment. Since "hand releases" are no different than actual intercourse under the prostitution statute, however, appellant was making a useless distinction. Pursuant to his own stated house rules, appellant was allowing a prostitution business to flourish at his establishment.

Lastly, appellant was indirectly benefiting from the prostitution business on his premises. As the majority correctly notes, we cannot assume, based on the available evidence, that the "hand release" was included in the price of the massage. Similarly, we have no evidence to suggest that appellant was collecting a portion of the "tips" that his employees received for "hand releases." Therefore, the Commonwealth has failed to prove that appellant was receiving any direct benefit from the prostitution business. Nevertheless, both masseuse/employees informed Detective Carroll that many men came to the club for the "hand release" service, and that the place was "busy for that purpose." N.T. 12/14/93 at 16. Thus, even if appellant was not receiving a direct portion of the payments from "hand releases," he was receiving the indirect benefit of increased business by customers specifically seeking the sexual service.

Therefore, unlike *Blankenbiller*, we are presently faced with an on-site business owner, who is actively involved in the day-to-day operations of his business, specifically allowing a prostitution business to exist as an integral and profit-enhancing part of his business. While appellant's "it's up to you" style may preclude the finding that he managed, supervised, or controlled a prostitution business, I must conclude that his actions do rise to the level of "otherwise keeping" a prostitution business.

Since I would find that the evidence is sufficient to support appellant's conviction for promoting prostitution, and that appellant's two remaining claims are meritless,[2] I would affirm this judgment of sentence.

2. Appellant alleges that certain statements made by Ms. Vanderburg and Ms. Grama were admitted in violation of the *corpus delicti* rule. This rule requires that "independent evidence, beyond the statement of the accused, suggests that a crime has occurred." *Commonwealth v. Buck,* 426 Pa.Super. 26, 29, 626 A.2d 176, 177 (1993). Since I agree with the trial court that the testimony of the undercover officers provided sufficient independent evidence to suggest that prostitution was occurring, I reject appellant's assertion that the *corpus delicti* rule was violated.

Appellant also alleges that the trial court erred in not requiring Officer Hagger to demonstrate the hand gesture she used to indicate male masturbation when she interviewed with appellant. Appellant believes that Hagger impermissibly testified as to her opinion of what the gesture meant. I find this argument totally devoid of merit. The transcript of the interview between appellant and Officer Hagger indicates that immediately after Hagger made the gesture, appellant responded by stating "That's up to you. You talking about a hand release?" Hagger answered "Yeah." Since both parties clarified their understanding of the gesture in the ensuing conversation, which was captured on tape, Officer Hagger's trial testimony was not an impermissible opinion, but was merely cumulative evidence of the parties' understanding of the term.