**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Gary L. DOBRINOFF, Appellant.**

Superior Court of Pennsylvania.

Submitted April 9, 2001.
Filed Sept. 10, 2001.
Reargument Denied Nov. 20, 2001.

Gerald A. Lord, York, for appellant.

Francis T. Chardo, Asst. Dist. Atty., Harrisburg, for the Com.

Before: DEL SOLE, President Judge, STEVENS, and OLSZEWSKI, JJ.

STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Dauphin County following Appellant's conviction on two counts of promoting prostitution. On appeal, Appellant contends that the evidence was insufficient to sustain his convictions since he did not knowingly promote prostitution and/or procure a prostitute for a patron. We affirm.

¶ 2 "The law is settled in this Commonwealth that in reviewing the sufficiency of the evidence, the appellate court is required to review all the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth,...[as verdict winner]." *Commonwealth v. Earnest*, 386 Pa.Super. 461, 563 A.2d 158, 159 (1989) (citation omitted). "The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt." *Commonwealth v. Taylor*, 324 Pa.Super. 420, 471 A.2d 1228, 1229 (1984) (citation omitted). Moreover, "it is clear that a jury may believe all or only a part of a witness' testimony, and so long as the verdict is supported by the evidence there is no basis for interference with the fact-finding function of the jury." *Commonwealth v. Simpson*, 316 Pa.Super. 115, 462 A.2d 821, 824 (1983) (citation omitted).

¶ 3 Based on the aforementioned standard, the evidence reveals the following: Appellant is the owner of several adult entertainment clubs including "Fantasies" located in Harrisburg. The instant case arose out of a joint investigation between the Criminal Investigation Division of the Dauphin County District Attorney's Office, the Pennsylvania State Police, and the Lower Paxton Township Police.

¶ 4 Working undercover, Detective Sergeant Garver visited Fantasies on several occasions. Upon Detective Garver's first visit, a performer approached him and offered to do whatever Detective Garver wanted in the back room for $100.00. After Garver indicated he only had $50.00, he was denied access to the back room and departed. During Garver's second visit, a performer using the name "Pleasure" approached him. Garver asked "Pleasure" if she would have sex with him, and she refused but indicated that she had a place away from the club to meet and provided him with a phone number. Later that same evening, Tina Peters, a performer using the name "Sheila," approached Garver. After paying $65.00 for a private dance, Garver asked Peters if he could have sex with her. She refused but told him he could reach her at a certain telephone number registered to another club owned by Appellant. During his third visit, Garver spoke with Peters and another performer named Lee. Garver paid $125.00 to the club manager in order to gain access to the back room for a dance with Peters. In the back room, Peters began to stroke Garver's penis and quoted a price of

$275.00 for a hand release and $300.00 for oral sex with a condom. Peters "basically agreed" to have sex with him off the premises.

¶ 5 Also working undercover, Pennsylvania State Police Trooper Longenecker visited Fantasies. During his first visit, Trooper Longenecker paid $125.00 to the club manager and was taken to a second floor apartment. There, Longenecker "tipped" $175.00 to Peters, who removed Longenecker's clothing and started to stroke him. Longenecker asked for a condom, but Peters said she did not have one and suggested he go across the street to a convenience store to buy one. Longenecker stopped Peters from further activity and left the club.

¶ 6 While at Fantasies, Longenecker saw a sign advertising an exotic maid service with a telephone number registered to Appellant's residence. Longenecker called the number and spoke with Appellant, who indicated that he was the owner of the service and quoted a price of $150.00 per hour plus tips. According to Appellant's instructions, Longenecker paid $150.00 at Fantasies and provided the hotel and room number he wanted the "maid" to visit. When the performer did not arrive at the scheduled time, Longenecker called Fantasies. Peters returned his call and asked to be picked up at the club. Longenecker testified that when they returned to the hotel Peters asked him if he had spoken to Appellant about her tips. Longenecker replied that he had, and Peters informed him that "the more you pay, the more you get." After giving her $180.00, Longenecker, at Peters' instruction, removed his clothes. When Longenecker indicated that he wanted more than masturbation, Peters produced a condom. Longenecker gave the arrest signal and officers entered the room and arrested Peters. Peter later pleaded guilty to prostitution charges.

¶ 7 Appellant was charged with two counts of promoting prostitution and one count of criminal conspiracy. After a jury trial, he was found not guilty of criminal conspiracy but was convicted on both counts of promoting prostitution. He was sentenced to concurrent terms of 16 to 48 months. Appellant filed a timely appeal, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, Appellant filed the statement, and the trial court filed an opinion.

¶ 8 As indicated previously, Appellant contends that the evidence was insufficient to convict him of promoting prostitution. Specifically, Appellant contends that the evidence failed to establish that he knowingly promoted prostitution as a business or knowingly procured a prostitute for a patron. We disagree.

¶ 9 Appellant was charged under 18 Pa. C.S.A. § 5902(b)(1) and (5) which provide:

(b) Promoting prostitution—A person who knowingly promotes prostitution of another commits a misdemeanor or felony as provided in subsection (c) of this section. The following acts shall, without limitation of the foregoing, constitute promoting prostitution:

(1) owning, controlling, managing, supervising or otherwise keeping, alone or in association with others, a house of prostitution or a prostitution business; [or]

(5) procuring a prostitute for a patron[.]

18 Pa.C.S.A. § 5902(b).

In order to sustain the conviction[s] for promoting prostitution, this Court must be satisfied that the evidence was sufficient to convince the jury beyond a reasonable doubt that the Commonwealth proved: (1) that there was a prostitution business; and (2) that the accused had a connection with the 'run-

ning, control, supervision or keeping of the prostitution business.'

*Commonwealth v. Blankenbiller*, 362 Pa.Super. 477, 524 A.2d 976, 978 (1987). The Pennsylvania Supreme Court has defined prostitution as "sexual relations for hire." *Commonwealth v. Miller*, 469 Pa. 24, 25, 364 A.2d 886, 887 (1976).

¶ 10 We conclude the evidence was sufficient to show that Appellant's employees/performers were engaged in a prostitution business and that Appellant had a connection with the "running, control, supervision or keeping" of the prostitution business.

¶ 11 Here, the evidence reveals that at Fantasies, a club owned by Appellant, sex was occurring in the back room. For example, Detective Garver and Trooper Longenecker testified that sex was offered to them in the back room, and both officers indicated that the club manager was aware of the activity. Moreover, Trooper Longenecker testified that, while in Fantasies, he saw an advertisement for an exotic maid service, and the telephone number on the advertisement was registered to Appellant's residence. When Trooper Longenecker called the number, Appellant answered, indicated that he was the owner of the service, and quoted a price of $150.00 per hour plus tips. Appellant then told Trooper Longenecker to pay at Fantasies, and, as a result of following Appellant's dictates, Trooper Longenecker engaged in sexual activity with a prostitute.

¶ 12 Trooper Longenecker's testimony established that Appellant explained to him the payment arrangement concerning "tips" to be made to the prostitute and implicated Appellant as the administrator of the illicit business at issue. As such, the jury was entitled to find that prostitution existed and that Appellant "ran, controlled, supervised, or kept the prostitution business."[1] Based on all of the aforementioned, the evidence was sufficient to convict Appellant.

¶ 13 Affirmed.

¶ 14 Dissenting opinion by President Judge DEL SOLE.

DEL SOLE, President Judge, dissenting.

¶ 1 I dissent based upon my conclusion that the evidence presented by the Commonwealth was insufficient to support Appellant's conviction.

¶ 2 While I agree that the Commonwealth has met its burden of proving, beyond a reasonable doubt, that at least some performers were engaged in a prostitution business, I conclude that the evidence was not sufficient to prove beyond a reasonable doubt that Appellant had a connection with the "running, control, supervision or keeping" of the prostitution business. *Commonwealth v. Blankenbiller*, 362 Pa.Super. 477, 524 A.2d 976, 978 (1987).

¶ 3 In *Blankenbiller*, 362 Pa.Super. 477, 524 A.2d 976; the appellant arranged a party, attendance at which required a $15.00 payment covering beer, snacks and a how with adult performers. *Id.* at 480, 524 A.2d 976. Two undercover officers attended the party and testified that various announcements over the speaker system indicated that sex was available for money. *Id.* at 480, 524 A.2d 976. A witness testified that she arranged for four

---

1. We note that, in his Statement of Questions Involved, Appellant raises two issues concerning the jury instruction. However, Appellant failed to develop the issues in the argument portion of his brief, and, in fact, indicates that he is withdrawing the issues, even though the issues were raised in his Pa.R.A.P. 1925(b) statement. As such, we decline to discuss the issues further.

women to attend the party to perform acts of prostitution. *Id.* at 480, 524 A.2d 976. Two of those women engaged in sexual activities with attendees. *Id.* at 480, 524 A.2d 976. The Commonwealth based its case on the facts that the appellant: (1) was the president of the company that owned the property where the party took place; (2) was seen taking a roll of money; (3) was seen selling one ticket; (4) helped two of the performers carry their bags into the building before the party; and (5) was present when the announcement that sex was available for money was made. *Id.* at 481–482, 524 A.2d 976. However, the appellant received no income from the activities of the prostitutes. *Id.* at 481, 524 A.2d 976. This Court held that:

> Though it is clear that a prostitution business was operating at the date and time in question, the Commonwealth did not prove that the appellant received any income from the business.

*Id.* at 481, 524 A.2d 976.

¶ 4 In *Commonwealth v. DeStefanis*, 442 Pa.Super. 54, 658 A.2d 416 (1995), the appellant owned a massage parlor that employed masseuses who provided massages for $60.00 to $65.00. An undercover officer investigating the parlor was offered a "hand release" by two of the appellant's employees for "a tip." Another undercover officer applied for a position as a masseuse and was told by the appellant that parlor rules forbade sexual intercourse (including oral) with clients and that he did not think anyone was providing hand releases. The appellant reiterated "I don't touch any of your money.... Everyone keeps their own tips." *Id.* at 417. Based upon this investigation, the Commonwealth charged the appellant with promoting prostitution. However, this Court found there was insufficient evidence to prove the appellant "had a connection with the 'running, control, supervision, or keeping of the prostitution business'" because the appellant received no income from the business. *Id.* at 420–421. "This is especially true in light of [the appellant's] statements to [the undercover officer who applied for a position as a masseuse] that he did not think anyone was providing hand releases, and that he did not share any portion of the employees' tips." *Id.* at 421.

¶ 5 In the instant case, to prove Appellant promoted prostitution, the Commonwealth provided only that: (1) all but one of the undercover exchanges occurred on property owned by Appellant; (2) when Garver requested to have sex with one of Appellant's employees, he was given a phone number registered to another club owned by Appellant; and (3) when Longenecker called to request an "exotic maid," he spoke directly with Appellant. The Commonwealth presented no evidence that Appellant received direct income from the sexual encounters of his employees. "While a criminal conviction may rest upon wholly circumstantial evidence, it may not be based upon mere surmise or conjecture." *Commonwealth v. Stores*, 317 Pa.Super. 109, 463 A.2d 1108, 1112 (1983).

¶ 6 While the Commonwealth was able to establish that the cost of admission to enter the semi-private rooms at Appellant's club went to Appellant, it was unable to establish that Appellant received any "tip money" earned by the entertainers performing in the room. The Commonwealth had no evidence that any of the tip money the performers earned in exchange for performing sexual acts went to Appellant.

¶ 7 Further, although Peters gave Garver a phone number registered to another club owned by Appellant when he requested to have sex with her, the Commonwealth introduced no evidence that Appellant knew of Peters' intended actions. The

**150**

evidence does not support the inference that Appellant arranged a sexual encounter between Garver and Peters or that he received income from it.

¶ 8 The Commonwealth relied heavily on the fact that Longenecker spoke directly with Appellant when requesting an "exotic maid." However, as Longenecker testified, when the performer did not arrive at the scheduled time, Longenecker called Fantasies. Peters returned his call and asked to be picked up at the club. This evidence does not support the inference that Appellant arranged a sexual encounter between Longenecker and Peters because it was the trooper who contacted Peters directly and transported her to the motel. Further, it cannot be inferred that Appellant received income from the encounter, since the trooper paid Peters $180.00 in "tips" after she was in the motel room. *Id.* at 73. There was no evidence offered that Appellant was to receive any of Peters' "tip" money.

¶ 9 Although one of Appellant's employees clearly engaged in prostitution, there is no evidence to show that Appellant had a connection with the "running, control, supervision or keeping" of the prostitution business. The Commonwealth did not prove that Appellant received any income from the activities of his employees as required by *Blankenbiller,* 362 Pa.Super. 477, 524 A.2d 976, and *DeStefanis,* 442 Pa.Super. 54, 658 A.2d 416. Thus I conclude the evidence offered was not enough to support a finding of guilt by a reasonable doubt, and I would reverse Appellant's convictions and vacate his sentences for promoting prostitution.