J-A04036-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                       :          PENNSYLVANIA
                                                       :

              v.                          :
                                                           :

POK SUN CHANG                     :
                                                           :

             Appellant          :     No. 248 EDA 2018

Appeal from the Judgment of Sentence November 8, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008605-2016

BEFORE:   LAZARUS, J., KUNSELMAN, J., and COLINS*, J.

DISSENTING MEMORANDUM BY COLINS, J.:        **FILED JUNE 26, 2019**

As I would conclude that the evidence presented at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to prove that Appellant committed the offense of promoting prostitution, I must respectfully dissent from the learned majority's reversal of Appellant's conviction.

The offense of promoting prostitution as defined in Section 5902(b)(1) of the Crimes Code, 18 Pa.C.S. § 5902(b)(1) requires proof of two elements: first, the existence of a prostitution business, and, second, that the defendant owned, controlled, managed, supervised, or otherwise kept – in other words, "promoted" – the prostitution business.[1]  Though not defined in the statute,

_____

[1] Section 5902(b)(1) provides:

_____

*   Retired Senior Judge assigned to the Superior Court.

this Court has held that a prostitution business is "commercial [sexual] activity engaged in for gain." *Commonwealth v. Johnson*, 670 A.2d 666, 669 (Pa. Super. 1996) (quoting *Commonwealth v. DeStefanis*, 658 A.2d 416, 420 (Pa. Super. 1995)). The mere agreement or offer to perform sexual acts for gain satisfies the statute, and there is no requirement that sexual acts actually be performed. *Commonwealth v. Chon*, 983 A.2d 784, 789 (Pa. Super. 2009); *DeStefanis*, 658 A.2d at 420 n.4.

The Commonwealth presented overwhelming evidence that the Pink Spa was a prostitution business. Officer Kearney first learned of the Pink Spa from an advertisement on the Backpage.com website, which Officer Kearney knew from his experience in vice investigations was frequently a site of advertisement for prostitution services. N.T., 8/31/17, at 8-16. The Commonwealth introduced this advertisement as an exhibit, which stated that the Pink Spa offered "3 NEW CHERRY GIRLS," "ASIAN LOVE," and "Old Style Service," and displayed photographs of young Asian women in lingerie.

---

The following acts shall…constitute promoting prostitution:

> (1) owning, controlling, managing, supervising or otherwise keeping, alone or in association with others, a house of prostitution or a prostitution business…

18 Pa.C.S. § 5902(b)(1). Though Appellant goes to great pains to argue that the Commonwealth did not prove that the Pink Spa is a "house of prostitution" which requires, under the statutory definition, that prostitution "is regularly carried on" in a particular location, 18 Pa.C.S. § 5902(f), Section 5902(b)(1) was written in the disjunctive and a plain reading of this statute makes clear that the offense of promoting prostitution may be found where a defendant promoted either a prostitution business or a house of prostitution.

Commonwealth Ex. C-1. Officer Kearney visited the Pink Spa at the address listed online, rang the bell as instructed in the advertisement, and was greeted at the front door by Appellant. N.T., 8/31/17, at 16-17. Officer Kearney then asked Appellant "[h]ow much is it" – with no discussion of any specific service to be performed – and Appellant quoted him a price of $160. *Id.* at 16-17, 20. After Officer Kearney asked whether there was more than one girl available to choose from, Appellant presented two young women, Miss An and Miss Kim, and Officer Kearney selected Miss An. *Id.* at 18. Officer Kearney then paid Miss An the quoted $160 price as directed by Appellant, and, following a table shower and massage, Officer Kearney asked "[c]an we have sex now?" *Id.* at 18-19, 44. Miss An responded in the affirmative, and Officer Kearney then asked "[d]o I have to give you any more money?" *Id.* at 19. Miss An responded to this question in the negative, confirming that her performance of sexual acts was included in the previously quoted price. *Id.* at 19. This evidence clearly establishes the provision of a sex act for commercial gain required of a prostitution business. *See, e.g.*, *Johnson*, 670 A.2d at 669-70 (provision of hand stimulation of genitals that was included within the price of the massage service established a prostitution business).

*DeStefanis* and *Commonwealth v. Blankenbiller*, 524 A.2d 976 (Pa. Super. 1987), relied upon by the majority, do not support the conclusion that the Pink Spa was not a prostitution business. In *DeStefanis*, the crucial factors demonstrating that the fitness center was not a prostitution business was that the only financial benefit for the hand release would be to the

massage therapist as a tip rather than as a part of the fee paid to the fitness center and the owner's statements making clear that the provision of such sex acts could only be a side business to the therapist's main role of providing legitimate massage services. 658 A.2d at 417-18, 420. By contrast, in this case, Appellant told Officer Kearney that the service on offer at the Pink Spa cost $160, and Miss An confirmed to Officer Kearney that sexual contact was included within the service at no extra charge. Unlike in **DeStefanis**, there is no basis to conclude that Miss An was operating a side prostitution business in addition to the provision of legitimate massages, but rather the evidence at trial, including the online advertisement for the Pink Spa, gave the opposite inference that sex was part and parcel of the service for sale at the Pink Spa.[2]

**Blankenbiller** is even less apposite. In **Blankenbiller**, this Court concluded that, while there was no question that a prostitution business was

---

[2] The majority cites the fact that Miss An massaged Officer Kearney for approximately 20 to 30 minutes prior to sex being discussed as a reason to conclude that sex was not included in the original price of the service. Majority Opinion at 10. However, one would be hard pressed to describe the full-body "table shower" massage that Miss An performed topless on Officer Kearney including contact with the officer's genitals as a standard, legitimate massage service. N.T., 8/31/17, at 18-19, 37, 43; **see** 49 Pa. Code §§ 20.1, 20.42(b)(5)-(7), 20.43(a) (providing that a massage therapist violates the standard of professional conduct and subjects herself to immediate suspension of her license through indecent exposure, exposing or touching a client's genitals except for therapeutic treatment, or engaging in sexually suggestive or erotic behavior). Even if this massage would not be seen as a prelude to the sexual activity that was explicitly offered later, the statute provides no basis upon which to conclude that the inclusion of a legitimate massage service would make an establishment offering sex for money any less of a prostitution business.

in operation at the fundraising party for the softball team, the owner of the restaurant where the party occurred did not have any involvement with the prostitution business simply based on the fact that he organized and sold tickets for the party and was seen near a loudspeaker where announcements were made publicizing the presence of the prostitutes. 524 A.2d at 977-80. Here, Appellant's connection to the prostitution business at the Pink Spa is well-established because she admitted customers into the establishment, set the price for the prostitute's services, and directed the actions of the prostitutes working at the establishment.

In addition to establishing a prostitution business at the Pink Spa, the Commonwealth also showed that Appellant promoted that business. As the text of Section 5902(b)(1) makes clear, promoting prostitution can be shown by a defendant either "owning, controlling, managing, supervising **or** otherwise keeping" the prostitution business and that such efforts in promoting the prostitution business may be taken "alone or in association with others." 18 Pa.C.S. § 5902(b)(1) (emphasis added); *see also Blankenbiller*, 524 A.2d at 978 (to prove promoting prostitution Commonwealth must show existence of a prostitution business and "that the accused **had a connection with** the 'running, control, supervision or keeping of the prostitution business'" (emphasis added))); *see also DeStefanis*, 658 A.2d at 419 (same). There is no requirement in the statute or our case law that an individual take a portion of the fee paid for sexual acts to be found guilty of

promoting the prostitution business.[3] Instead, the element of promoting a prostitution business may be found on a defendant's management, supervision, or control of the business, actions which do not necessarily entail that the defendant directly profit from the illicit operation.[4]

---

[3] The majority relies on **DeStefanis** for the proposition that Appellant could not have been found to have promoted prostitution because no evidence was presented that Appellant "benefited financially" from the transaction between Miss An and Officer Kearney or handled Officer Kearney's payment directly. Majority Opinion at 10 & n.6. While this Court in **DeStefanis** indicated that the defendant could not be found guilty of promoting prostitution because he did not receive income from the business, 658 A.2d at 421, this statement, as the Court explicitly recognized, was *dicta*, and it is therefore not binding in this case. **See id.** Furthermore, **DeStefanis** relied on **Blankenbiller** for this proposition, and **Blankenbiller** only discussed receipt of income as one of several factors in determining whether a defendant can be found guilty of promoting prostitution. 524 A.2d at 979-80. Moreover, **Commonwealth v. Robertson**, 116 A.2d 224 (Pa. Super. 1955), the case on which we relied in **Blankenbiller** regarding the significance of the receipt of money, addressed a challenge to a conviction under Section 515 of the Penal Code of 1939, 18 P.S. § 4515, which criminalized the acceptance of bawd money. Unlike the prior statute, Section 5902(b)(1) does not require the acceptance of money related to the prostitution activity as an element to sustain a conviction of promoting prostitution.

[4] The terms control, manage, and supervise are not defined in the statute, and may therefore be construed "according to their common and approved usage" with reference to their dictionary definitions. 1 Pa.C.S. § 1903(a); **Commonwealth v. Baumgartner**, 206 A.3d 11, 16 (Pa. Super. 2019). Webster's Dictionary defines "control," in relevant part, as "to exercise restraining or directing influence over" and "to have power over"; "manage" as "to direct or carry on business or affairs"; and "supervise" as to "to coordinate, direct, and inspect continuously and at first hand the accomplishment of" and to "oversee with the powers of direction and decision the implementation of one's own or another's intentions." Webster's Third New International Dictionary 496, 1372, 2296 (2002). None of these definitions denotes sharing in the profits of a business.

The testimony at trial showed that after Officer Kearney rang the bell to the Pink Spa, Appellant opened the door for him and led him inside. Appellant and Officer Kearney then discussed the fee and how payment should be made directly to the young woman providing the service. When Officer Kearney asked if he could choose the young woman who would perform the service for him, Appellant presented two options, Miss An and Miss Kim, and advised Officer Kearney that he could choose between them. I believe that this evidence was more than sufficient to support the trial court's conclusion that Appellant managed, supervised, and controlled the operations of the Pink Spa. Though the Commonwealth did not directly prove that Appellant drew a wage or salary from her work in managing the Pink Spa, even assuming such a requirement exists in the statute, Appellant's status as an employee or manager of the Pink Spa could be reasonably inferred from the evidence presented.

Having determined that the evidence was sufficient to support a conviction for promoting prostitution, I would also conclude that the remaining four issues raised by Appellant in this appeal are meritless. First, with respect to Appellant's request for a remand to allow the suppression court to state its findings of fact and conclusions of law supporting the denial of Appellant's suppression motion on the record, a remand is not required because the arrest of Appellant by the backup officers was plainly authorized by Appellant's prior consent to Officer Kearney to enter the Pink Spa. ***See Commonwealth v. Moye***, 586 A.2d 406, 408-09 (Pa. Super. 1990). Next, Appellant's contention

that certain statements by the trial court when rendering the verdict were based on speculation and conjecture lacks merit as the identified statements were reasonable inferences that the trial court, as fact-finder, was entitled to draw from the evidence. Appellant's argument that the trial court gave improper consideration to her status as an immigrant during sentencing also fails because the trial court's statements at the sentencing hearing were in the context of a discussion of the exploitation of undocumented sex workers and did not express bias towards Appellant's status as a naturalized citizen. Finally, regarding Appellant's argument that Section 5902(b)(1) is unconstitutionally vague, the common meanings of the statutory terms control, manage, supervise, and keep are sufficiently definite to give a person of ordinary intelligence fair notice of what conduct is prohibited by the statute.

Accordingly, because I believe that the Commonwealth presented sufficient evidence that Appellant committed the offense of promoting prostitution and that no other meritorious issue has been raised by Appellant, I must dissent from the majority's disposition of this appeal.