J-S23020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SOON O. LEE, | |
| Appellant | No. 1221 EDA 2014 |

Appeal from the Judgment of Sentence Entered April 1, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013080-2012

BEFORE:  DONOHUE, SHOGAN, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 29, 2015**

Appellant, Soon O. Lee, appeals from the judgment of sentence entered following her convictions of promoting prostitution and conspiracy. We affirm.

The trial court summarized the factual history of this case as follows:

> The evidence from trial, viewed in the light most favorable to the Commonwealth as the verdict winner, established the following facts.  On May 4, 2012, Philadelphia Police Officer Thomas McHale was involved in an undercover prostitution investigation with the Philadelphia Police Department, Citywide Vice Unit.  **See** Notes of Testimony ("N.T."), March 31, 2014 at p. 9.  The Unit was investigating complaints of prostitution at the Happiness Spa ("Spa"), located at 1812 Ludlow Street in Philadelphia.  **Id**. at 10.  The Spa advertised its massage services on the back pages of newspapers, specifically *Philadelphia Weekly*.  **Id**. at 11; 16.

---

[*]  Retired Senior Judge assigned to the Superior Court.

On May 4, 2012, around 11:00 a.m., Officer McHale entered the Spa's front foyer and rang the doorbell to a second entrance, as the sign in the foyer instructed. *Id*. at 17. Officer McHale was met by an older woman, later identified as [Appellant]. *Id*. [Appellant] started talking to Officer McHale and began touching and patting [the officer's] waist area. *Id*. [Appellant] then took Officer McHale by the hand and led him to the second floor, where he was introduced to Minju Je ("Je"). *Id*.

After a brief conversation with [Appellant] in Korean, Je took Officer McHale to a bedroom where she asked him for $180. *Id*. at 19. Officer McHale handed Je $200 in prerecorded buy money. *Id*. at 19. Je instructed Officer McHale to take his clothes off and put a towel on as she left the room with the $200. *Id*. at 20. Je returned to the room and escorted Officer McHale back down to the first floor shower room, where he received a table shower.[1] *Id*. at 20.

Following the table shower, Je dried Officer McHale off with a towel and escorted him back to the second-floor bedroom, where she instructed him to remove his towel and lie down on the bed completely nude. *Id*. at 21. There were no massage tables in the bedroom, only a bed. *Id*. at 21. Je took an open condom wrapped in a tissue, placed it on the bed next to Officer McHale, took hold of his penis, and attempted to perform "manual masturbation" on him. *Id*. at 21-23. Officer McHale immediately stopped Je from proceeding and notified his backup team, who was waiting outside. *Id*. at 23, 25. Officer McHale heard his backup team knock and announce their presence. Approximately fifteen to thirty seconds later, after no one from the Spa answered the door, the backup team broke through the entrance. *Id*. at 23. Once inside, Officer McHale and his backup team secured the property and the five individuals inside. *Id*. at 24; 44.

---

[1] When asked to describe a "table shower" for the trial court, Officer McHale stated that "[i]t's literally just a table, like a massage table, where you lay down and they put soap on you and they throw buckets of hot water on you." N.T., 3/31/14, at 20.

Officer McHale, along with Philadelphia Police Officer James Scott and other officers executed a search warrant at the Spa at 2:50 p.m. on May 4, 2012, in [Appellant's] presence. Police officers recovered ninety-one condoms; four cameras; two televisions; three sex toys; a clipboard; four receipt rolls; six radios; one laptop; four phones; one credit card machine; nude gel; Vaseline; one bill; a masseuse license in [Appellant's] name; mail addressed to [Appellant]; a business privilege license; numerous towels; two bottles of lubricants; six containers of powder; seven bottles of alcohol; seven bottles of oil; and $8,646.00 in United States currency. *Id*. at 37. These items were placed on property receipts, which were introduced at trial as exhibits C-3 and C-4. After the execution of the search warrant, [Appellant] and Je were placed under arrest.

Trial Court Opinion, 8/15/14, at 2-3.

Appellant was charged with promoting prostitution and conspiracy. On March 4, 2013, Appellant filed a motion to suppress physical evidence, which was denied on September 9, 2013. On April 1, 2014, following a nonjury trial, Appellant was convicted of both crimes. That same day, the trial court sentenced Appellant to serve concurrent terms of probation of two years for each conviction. This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

Whether the evidence was insufficient as a matter of law to sustain the convictions for promoting prostitution and conspiracy.

Appellant's Brief at 7.

When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences

to be drawn from the evidence. *Commonwealth v. Duncan*, 932 A.2d 226, 231 (Pa. Super. 2007) (citation omitted). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id*. (quoting *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa. Super. 2005)). However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. *Id*. In addition, this Court may not substitute its judgment for that of the fact finder, and where the record contains support for the convictions, they may not be disturbed. *Id*. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented. *Commonwealth v. Hartle*, 894 A.2d 800, 804 (Pa. Super. 2006).

Initially, Appellant challenges her conviction of promoting prostitution. Appellant's Brief at 9-15. Appellant contends that the evidence reflects that she was simply an employee of the business and that she was not present when the interaction between the masseuse and the undercover officer took place and therefore, she did not actively participate in the running of the business.

The crime of promoting prostitution is defined in the Crimes Code, in relevant part, as follows:

> **b) Promoting prostitution.--** A person who knowingly promotes prostitution of another commits a misdemeanor or

felony as provided in subsection (c) of this section. The following acts shall, without limitation of the foregoing, constitute promoting prostitution:

> (1) owning, controlling, managing, supervising or otherwise keeping, alone or in association with others, a house of prostitution or a prostitution business;

18 Pa.C.S. § 5902(b)(1).

Regarding the elements of the crime of promoting prostitution, we have stated the following:

> In order to sustain a conviction of promoting prostitution, this court must determine that there is sufficient evidence to convince the [fact finder] beyond a reasonable doubt that the Commonwealth proved: (1) the existence of a prostitution business; and (2) that the accused actively participated in the "running, control, supervision or keeping of the prostitution business."

*Commonwealth v. Dobrinoff*, 784 A.2d 145, 147-148 (Pa. Super. 2001) (quoting *Commonwealth v. Blankenbiller*, 524 A.2d 976 (Pa. Super. 1987)). Prostitution is defined as "sexual relations for hire." *Dobrinoff*, 784 A.2d at 148 (quoting *Commonwealth v. Miller*, 364 A.2d 886, 887 (Pa. 1976)). Furthermore, it is well established that "[t]here was no need for the officer to participate in the sexual activity to the extent of having intercourse" in order to sustain a conviction for promoting prostitution. *Commonwealth v. Danko*, 421 A.2d 1165, 1171 (Pa. Super. 1980).

Here, the trial court offered the following analysis regarding Appellant's challenge to the sufficiency of the evidence relevant to the conviction of promoting prostitution:

[Appellant] argues that there is insufficient evidence to establish the charge of promoting prostitution . . . .

In the case at bar, the evidence was sufficient to establish beyond a reasonable doubt that the Spa was being used to house a prostitution business (*i.e.*, wherein individuals would engage in sexual activity as a business). The Spa's advertisement depicts a young woman in the nude and promises to treat each customer like a "king." **See** Trial Exhibit C-1.[3] After Officer McHale paid $200, Je led him to a bedroom, told him to disrobe and put a towel on, escorted him downstairs and gave him a "table shower," took him back upstairs and directed him to lie on a bed in the nude, placed an open condom beside his waist, and then proceeded to attempt to perform "manual masturbation" on him. Moreover, in addition to the condom recovered from the bed on which Officer McHale was lying, ninety other condoms, as well as multiple sex toys, were recovered from the Spa. This evidence, as well as all reasonable inferences drawn therefrom, was sufficient to prove that a prostitution business was operating from the Spa.

[3] The Spa's advertisement appears among other provocative advertisements for "phone sex" and spas.

The evidence at trial also established beyond a reasonable doubt that [Appellant] ran, controlled, or supervised the prostitution business operating out of the Spa: the masseuse license was in [Appellant's] name; [Appellant] had the authority to control who entered the premises; and she was the one who initially greeted Officer McHale, patted him down, and then led him to Je. The court reasonably inferred from this evidence that [Appellant] was in control of and/or supervised the Spa operation. Therefore, sufficient evidence was presented at trial for the court to find [Appellant] guilty of promoting prostitution.

Trial Court Opinion, 8/15/14, at 4-5.

Our review reflects that Appellant controlled the entry of the undercover officer into the establishment and conducted a pat down search of the officer. N.T., 3/31/14, at 17, 29. Although there was a masseuse

license recovered in Appellant's name, Appellant did not provide a massage. Rather, Appellant took the officer by the hand to an upstairs bedroom and introduced the officer to the prostitute. *Id*. at 29. Appellant then had a conversation with the prostitute in a foreign language, left the room, and the prostitute then quoted the officer a price of $180.00. *Id*. at 19, 30. The officer also testified that there was no massage table in the bedroom. *Id*. at 21. This evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to prove beyond a reasonable doubt that Appellant committed the crime of promoting prostitution.

We observe that in support of her argument, Appellant relies on this Court's decision in *Commonwealth v. DeStefanis*, 658 A.2d 416 (Pa. Super. 1995). In *DeStefanis*, an undercover detective went to a fitness center and paid for a massage. At the completion of the massage, the masseuse asked if the detective wanted a "hand release." *Id*. at 417. The detective declined, but confirmed that a "hand release" was in fact "manual stimulation of the genitals," and while the masseuse did not charge for this service, she indicated that a tip would be appreciated. *Id*. Several weeks later the detective returned and received a massage. On that occasion, the detective inquired about "the availability of specific sexual acts other than a hand release." *Id*. The second masseuse indicated the "house rule" was that only hand releases would be performed. *Id*.

Over three months later, a female undercover officer interviewed with DeStefanis for a position as a masseuse at the fitness center. *DeStefanis,* 658 A.2d at 417. During the interview, which was taped with a recording device, the officer asked if she was permitted to provide a hand release to customers as an option to make more money. *Id.* at 417-418. DeStefanis indicated nine times during the taped conversation that the house rules included no sexual intercourse, but that she was permitted to offer a hand release for an additional tip, although, to his knowledge, none of the other masseuses offered the service. *Id.* at 418. DeStefanis further indicated that masseuses kept their own tips and that he did not "touch" that money. *Id.* About a month after the interview, DeStefanis was arrested. *Id.* A jury convicted DeStefanis of two counts of promoting prostitution and one count of conspiracy. *Id.* On appeal, DeStefanis argued that the evidence was insufficient to sustain his convictions. We agreed with DeStefanis, holding that the fitness center was not a "prostitution business" as defined by 18 Pa.C.S. § 5902, nor were the masseuses who offered hand releases doing so as part of the business. *Id.* at 420.

Specifically, we stated the following:

Detective Carroll's testimony reveals that the fitness center charged $60.00 - $65.00 up front for a legitimate massage. The evidence further revealed that, after the completion of his first massage, Detective Carroll was made aware that a hand release was available by [the first masseuse]. When Detective Carroll inquired about the price of a hand release, the vague response was, "a tip would be appreciated." Arguably, when a client does not agree to pay for a sexual service up front, the ensuing act

constitutes sexual activity between two consenting adults. [The second masseuse] did not even make Detective Carroll an offer of any type of sexual activity; it was not until the massage was completed and Detective Carroll initiated inquiries to [the second masseuse] about sexual options that she spoke about hand releases. There can be no assumption, therefore, that a hand release was included in the price of the massage. No price was discussed with [the second masseuse]. The fact that DeStefanis indicated to [the undercover officer] that providing hand releases was an acceptable way to make "tips" is not probative of a prostitution "business," nor are the admissions of [the first masseuse] and [the second masseuse] that they gave hand releases to some of their customers. This evidence, even when viewed in the light most favorable to the Commonwealth, is not sufficient to establish the "business" element of the prostitution statute beyond a reasonable doubt, specifically, that there existed "a commercial activity engaged in for gain." . . . Because no underlying "prostitution business" has been established, DeStefanis cannot be said to have promoted prostitution under section 5902(b) and, therefore, his conviction must be reversed.

*DeStefanis*, 658 A.2d at 420. In addition, although admittedly in *dicta*, the Court noted that there was no evidence that DeStefanis was receiving income from any sexual acts performed by masseuses, particularly in light of his statements that he did not think any employees were engaging in sexual activity and that he did not share in any portion of the employees' tips. *Id*. at 421.

Likewise, Appellant directs our attention to this Court's decision in *Blankenbiller*. Blankenbiller was an officer in companies that owned both a restaurant and a café. *Blankenbiller*, 524 A.2d at 977. He had sponsored a softball team by paying for their uniforms. *Id*. A party was held at the restaurant in order to raise additional funds for the softball team. *Id*. The

$15.00 ticket price for admission to the party entitled each purchaser to beer, snacks, and a go-go-dancer show. *Id*. Two undercover state troopers attended the party after purchasing tickets to the event at the café. *Id*. During the party, announcements were made over a speaker system indicating that sex was available for money, and Blankenbiller was in the vicinity of the loud speaker system. *Id*. The woman who ran a booking agency for the go-go dancers testified that she had hired four female dancers at $150 each and that she was paid $100 for making the arrangements and acting as a hostess. *Id*. at 977-978. The booking agent also testified that she brought four other women along for purposes of prostitution. *Id*. at 978. One of the prostitutes testified that she was responsible for collecting a certain amount of proceeds from the other girls, that the money was used to benefit the softball team, and that she did not know who Blankenbiller was. *Id*. Blankenbiller was convicted of promoting prostitution under 18 Pa.C.S. § 5902(b)(1). On appeal, Blankenbiller argued that the evidence was insufficient to sustain his conviction in light of the fact that he was merely present at the scene. *Id*. at 978. We agreed with Blankenbiller, stating the following:

> It is unreasonable to infer, from the fact that he either had allowed the party organizers to sell tickets at the restaurant or had allowed the use of the property for the party, that [Blankenbiller] ran, controlled, supervised, or kept a prostitution business at the party. The Commonwealth did not produce any evidence that [Blankenbiller] told anyone that prostitutes would be available at the event. Nor has it been shown that he personally made any of the "arrangements" with the women in

question. The Commonwealth also failed to demonstrate that he took part in any way in the illicit activities on the day of the party. The evidence shows only that [Blankenbiller] was present while the crimes took place and that he had helped promote the party. These facts do not make him criminally responsible for everything that occurred at the event. [M]ere presence does not establish guilt.

*Blankenbiller*, 524 A.2d at 979. The Court went on to mention the following facts:

The "hostess," who knew [Blankenbiller] previously, stated that she had made the party arrangements with . . . the manager of the softball team. Both [the hostess and the prostitute] who testified stated that the girls themselves told the guests that sex was available, that [Blankenbiller] had not made any of the announcements on the public address system, and that none of the entertainment arrangements, including the prostitution arrangements, had been made with [Blankenbiller].

*Id*.

Upon review of the certified record, we are left to conclude that Appellant's reliance upon *DeStefanis* and *Blankenbiller* is misplaced. Indeed, the decisions in those cases relied upon the facts that the appellants were not instrumental in organizing the illicit business between the prostitutes and their clients. Instantly, however, the record reflects that the undercover officer's entry into the establishment was controlled by Appellant, and Appellant conducted a pat-down search of the officer. N.T., 3/31/14, at 17-18. Appellant then took the officer, by the hand, to a second floor bedroom and introduced him to the prostitute, who was "scandalously clad." *Id*. at 17, 29. Appellant and the prostitute then had a conversation in a foreign language, and Appellant left the officer alone with the prostitute.

*Id*. at 19. Without discussion of services, the prostitute asked the officer for $180, and the officer gave her $200. *Id*. The prostitute then took the officer to be washed, and when the two returned to the bedroom, she placed a condom at his waist and immediately proceeded to perform masturbation upon him. *Id*. at 21. Thus, unlike the circumstances in *DeStefanis* and *Blankenbiller*, the evidence in this case establishes that there was no legitimate massage business being conducted at the Spa, but rather, this was a venue for prostitution. Furthermore, Appellant was an integral part of the business. Thus, Appellant's claim challenging the sufficiency of the evidence to support her conviction of promoting prostitution lacks merit.

In addition, Appellant argues that there was insufficient evidence to support her conviction of conspiracy. Appellant's Brief at 15. Appellant contends that she was merely present at the business when the undercover officer had an encounter with a prostitute.

Pursuant to the Crimes Code, conspiracy is defined as follows:

**§ 903. Criminal conspiracy**

**(a) Definition of conspiracy.--** A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

- 12 -

18 Pa.C.S. § 903(a).

Moreover, we have explained the following:

> A conviction for criminal conspiracy, 18 Pa.C.S.A. § 903, is sustained where the Commonwealth establishes that the defendant entered an agreement to commit or aid in an unlawful act with another person or persons with a shared criminal intent and an overt act was done in furtherance of the conspiracy.
>
> The essence of a criminal conspiracy is the common understanding that a particular criminal objective is to be accomplished. Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient. Rather, the Commonwealth must prove that the defendant shared the criminal intent, *i.e.,* that the Appellant was "an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement." The defendant does not need to commit the overt act; a co-conspirator may commit the overt act.
>
> A conspiracy is almost always proved through circumstantial evidence. "The conduct of the parties and the circumstances surrounding their conduct may create 'a web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt." The evidence must, however, "rise above mere suspicion or possibility of guilty collusion."
>
> > Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002) (*en banc*) (citations omitted). *See also Commonwealth v. Finnegan*, 421

A.2d 1086 (Pa. Super. 1980) (affirming conviction of conspiracy where the defendant arranged the meeting of an undercover officer with a prostitute).

In addressing this issue challenging the sufficiency of the evidence, the trial court offered the following cogent analysis:

> [Appellant] also argues that there was insufficient evidence of a conspiracy to commit prostitution.
>
> * * *
>
> The evidence proved beyond a reasonable doubt that [Appellant] was guilty of conspiring to commit prostitution. [Appellant] asserts that her "mere presence" at the Spa and possession of a license to run a massage parlor was insufficient to sustain the conspiracy conviction. *See* [Pa.R.A.P. 1925(b)] Statement at ¶ 2. While Officer McHale may not have heard or understood any direct communication between [Appellant] and Je about engaging in sexual activity for profit, there was sufficient circumstantial evidence to support the finding of a conspiracy. The silent exchange of money for the performance of sexual favors indicated that everything done to Officer McHale was done in the ordinary course of business. Neither [Appellant] nor Je asked Officer McHale what services he was seeking. Instead, [Appellant] patted him down, brought him to Je, engaged in a brief conversation with Je in Korean, and left. It was after this conversation with [Appellant] that Je quoted Officer McHale a price and had no further discussion with him, except to tell him to remove his clothing. The seamless nature in which these encounters and transactions took place was circumstantial evidence of an agreement between [Appellant] and Je that Je would perform sexual activity for monetary compensation. Therefore the evidence was sufficient to find [Appellant] guilty of conspiracy.

Trial Court Opinion, 8/15/14, at 5-6. We find this analysis by the trial court to be persuasive and affirm the conviction of conspiracy on its basis.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/29/2015