J. S06040/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                    :           PENNSYLVANIA
               v.                 :
                                    :
XIAOTING SUN,                  :         No. 1546 EDA 2018
                                    :
            Appellant       :

Appeal from the Judgment of Sentence, December 11, 2017,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0009247-2016

BEFORE: BOWES, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:         **FILED APRIL 02, 2019**

Xiaoting Sun appeals from the December 11, 2017 judgment of sentence entered in the Court of Common Pleas of Philadelphia County following her conviction in a waiver trial of promoting prostitution, criminal solicitation, and criminal conspiracy.[1] The trial court imposed an aggregate sentence of three years' reporting probation, which consisted of three concurrent three-year probationary terms. Because the trial court improperly convicted appellant of and sentenced appellant for two inchoate offenses in violation of 42 Pa.C.S.A. § 906, we reverse appellant's criminal solicitation conviction and vacate appellant's judgment of sentence for criminal

---

[1] 18 Pa.C.S.A. §§ 5902(b), 902(a), and 903, respectively.

solicitation. We affirm appellant's judgments of sentence for promoting prostitution and criminal conspiracy.

The record reflects that on August 5, 2016, Police Officer Yun-Taek Yim of the Philadelphia Police Department was following up on numerous complaints of prostitution occurring at 1123 Race Street in Philadelphia. (Notes of testimony, 12/11/17 at 6-7.) In so doing, Officer Yim "did a check on Backpage" and "found numerous ads with the phone number 215-500-1077." (*Id.* at 7.) Officer Yim explained that backpage.com is a website that contains an advertisement section for those offering escort and massage services. (*Id.* at 8.)

While searching the above telephone number on backpage.com, Officer Yim found 25 posted advertisements for the three-day period commencing on August 3, 2016 and ending on August 5, 2016. (*Id.* at 7.) All of the advertisements included pictures of scantily clad Asian females and offered massage services with "[y]oung Asian girls." (*Id.* at 8-9.) Some of the advertisements showed the females posed on beds. (*Id.* at 8.)

Officer Yim then ran a property check on 1123 Race Street and discovered that it was not owned by appellant. (*Id.*) The property check also revealed that the Philadelphia Police Department's vice unit had made at least 15 arrests for prostitution-related activities at the address. (*Id.* at 9.)

On August 5, 2016 at approximately 9:00 p.m., Officer Yim called the number listed in the backpage.com advertisements. (*Id.* at 9-10.)

Officer Yim testified that an "Asian female answered the phone who was later identified as [appellant]." (*Id.* at 10.) Appellant then provided the 1123 Race Street address to Officer Yim and told him that "we have young Asian girls working today." (*Id.*)

Officer Yim and the vice unit then traveled to 1123 Race Street to investigate. (*Id.*) While the vice unit stayed in the vicinity, Officer Yim, who was investigating undercover, "went up to the front door of this location, went inside the first door and there was another second door which [was] locked." (*Id.* at 10-11.) Officer Yim observed a surveillance camera above the door. (*Id.* at 10.) After he rang the doorbell, appellant, dressed in pants and a shirt, opened the door. (*Id.* at 11.) Another female who was wearing only a bra and underwear was with appellant. Officer Yim was invited inside. (*Id.* at 12.)

Once inside, Officer Yim observed what he described as a "waiting area" furnished with sofas and chairs. (*Id.*) Appellant then instructed Officer Yim to follow her. Officer Yim recognized appellant's voice as that of the woman who answered the phone connected to the backpage.com advertisements. (*Id.* at 17) As Officer Yim followed appellant, he observed a long hallway that stretched to the rear of the property. (*Id.* at 12.) Officer Yim testified that:

> on the right side, there is approximately four to five partitioned off rooms which these rooms only have a bed. They have a nightstand table and on top of the nightstand table, they would have a very dimly lit lamp with some massage oils and tissues and towels. On the right side of the room, there is a shower room

> which is a large room that has a table inside of this room where they give table showers to customers that frequent there or as a customer. There's a bathroom. And there's a sleeping area for all the females that work there in one of the rooms in the back, and there is a kitchen in the back of this property.

*Id.* at 12-13.

Appellant led Officer Yim to Room No. 2. (*Id.* at 12.) Once inside the room, appellant asked Officer Yim if he had been to 1123 Race Street before. Officer Yim responded that he had been there "about a year ago." Appellant then told Officer Yim that she would "bring a nice girl" for him. (*Id.*)

After momentarily leaving Room No. 2, appellant returned with a woman dressed only in a black bra and black underwear who was later identified as Faye Hung Wang.[2] (*Id.* at 13.) Officer Yim then asked appellant if he had his choice of girls. Appellant responded that all of the girls were presently with other customers. Officer Yim then stated that Ms. Wang would be "fine." (*Id.* at 14.) Officer Yim testified that during this conversation with appellant, he had observed two other women, dressed only in their bras and underwear, walking back and forth.[3] (*Id.* at 13-14.)

---

[2] The record indicates that Ms. Wang was also charged with prostitution-related crimes in connection with the August 5, 2016 undercover investigation of 1123 Race Street in Philadelphia. (Notes of testimony, 12/11/17 at 13.)

[3] Officer Yim indicated that in addition to appellant, the August 5, 2016 undercover investigation of 1123 Race Street in Philadelphia resulted in the arrests and prosecutions of three other women, which included Ms. Wang. (Notes of testimony, 12/11/17 at 13-14.)

Appellant then exited Room No. 2, and Ms. Wang entered, closing the door behind her.  (*Id.* at 14.)  Ms. Wang asked Officer Yim if he wanted to take a shower.  He said that he did.  Ms. Wang then asked Officer Yim for $160.  Officer Yim handed Ms. Wang $160 in pre-recorded U.S. currency.  Ms. Wang then handed Officer Yim a towel and instructed him to remove his clothing.  Ms. Wang exited the room with the currency.  Officer Yim then removed his clothing.  Moments later, Ms. Wang returned to Room No. 2 and escorted Officer Yim to the shower room where there was a table.  Ms. Wang instructed Officer Yim to lay on the table.  Officer Yim complied.  Ms. Wang proceeded to give Officer Yim "a shower while [he] was laying down, front and back."  (**Id.** at 15.)

After the shower, Ms. Wang took Officer Yim back to Room No. 2 and instructed him to lay on the bed on his stomach.  (*Id.*)  Officer Yim complied.  Ms. Wang proceeded to give Officer Yim a full-body massage.  During this time, Officer Yim testified that he could hear "beds creaking in the other rooms."  (*Id.*)

After the massage, Ms. Wang instructed Officer Yim to lay on his back.  (*Id.*)  Officer Yim complied.  Ms. Wang massaged his chest and then removed her bra and underwear.  She then attempted to place a condom on Officer Yim's penis.  Officer Yim asked if he could "use the bathroom before [they had] sex."  (*Id.* at 15-16.)  Ms. Wang said, "okay."  (**Id.** at 16.)

Officer Yim then went into the bathroom, at which time he contacted backup officers. (***Id.***)

After the backup officers arrived, they served and executed a search warrant. (***Id.*** at 26.) The backup officers, along with Officer Yim, went into all of the rooms inside 1123 Race Street, which were occupied by naked male customers and naked females. (***Id.*** at 15.) During the search, officers recovered, among other things, $8,499 in U.S. currency from appellant's person; $3,958 in U.S. currency, described as "house money,"[4] which included the pre-recorded U.S. currency that Officer Yim had given to Ms. Wang; one box of condoms containing 1,008 condoms; a half of a box of small condoms; K-Y liquids and lubricants, including Astroglide; cellphones; customer logs; cameras; and a video recorder. (***Id.*** at 17, 18, and 26-28.) The record further reflects that a cellphone recovered near appellant was the cellphone connected to the number listed in the backpage.com advertisements. (***Id.*** at 17.)

Following appellant's convictions of the above crimes, the trial court imposed judgment of sentence. Appellant received three concurrent three-year probationary terms for each conviction, which resulted in an aggregate probationary term of three years. Following imposition of sentence, appellant filed a timely post-sentence motion, which was denied by operation

---

[4] Officer Stanley Kaluza explained that if police "cannot determine whose it is[, the police] call it house money and that is usually also defined as the proceeds that are given to the house as well. But because also there is no determination of who actually has this money, it's called house money." (Notes of testimony, 12/11/17 at 27.)

of law pursuant to Pa.R.Crim.P. 720(B)(3)(c). Appellant then filed a timely notice of appeal. The trial court did not order appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court did not file an opinion. By correspondence dated June 11, 2018, the Court of Common Pleas of Philadelphia County informed this court that because the trial court in this case, the Honorable Pamela Dembe, "is no longer sitting as a judge in Philadelphia County," the "file is being forwarded . . . without an opinion." (Correspondence to Superior Court of Pennsylvania Prothonotary, 6/12/18.)

Appellant raises the following issues for our review:

> [1.] WAS THE EVIDENCE INSUFFICIENT TO SUSTAIN THE PROMOTING PROSTITUTION CHARGE?
>
> [2.] WAS THE EVIDENCE INSUFFICIENT TO SUSTAIN THE SOLICITATION TO PROMOTE PROSTITUTION OR THE CONSPIRACY TO PROMOTE PROSTITUTION CHARGES?

Appellant's brief at 3.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter

of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Pappas*, 845 A.2d 829, 835-836 (Pa.Super. 2004)

(citation omitted).

The Crimes Code defines the crime of promoting prostitution, in relevant part, as follows:

> **(b) Promoting prostitution.--**A person who knowingly promotes prostitution of another commits a misdemeanor or felony as provided in subsection (c) of this section. The following acts shall, without limitation of the foregoing, constitute promoting prostitution:
>
> (1) owning, controlling, managing, supervising or otherwise keeping, alone or in association with others, a house of prostitution or a prostitution business;

18 Pa.C.S.A. § 5902(b)(1).

> In order to sustain a conviction of promoting prostitution, this Court must determine that there is sufficient evidence to convince the [fact finder] beyond a reasonable doubt that the Commonwealth proved: (1) the existence of a prostitution business; and (2) that the accused actively participated in the "running, control, supervision or keeping of the prostitution business."

*Commonwealth v. Dobrinoff*, 784 A.2d 145, 147-148 (Pa.Super. 2001), quoting *Commonwealth v. Blankenbiller*, 524 A.2d 976 (Pa.Super. 1987). Our supreme court has defined "prostitution" as "sexual relations for hire." *Dobrinoff*, 784 A.2d at 148, quoting *Commonwealth v. Miller*, 364 A.2d 886, 887 (Pa. 1976). Furthermore, it is well established that in order to sustain a conviction for promoting prostitution, "[t]here was no need for the officer to participate in the sexual activity to the extent of having intercourse." *Commonwealth v. Danko*, 421 A.2d 1165, 1171 (Pa.Super. 1980).

Here, appellant claims that the evidence was insufficient to sustain her conviction for promoting prostitution because it merely demonstrated that she was employed as a receptionist by a licensed massage parlor and that she was not present during Ms. Wang's interaction with Officer Yim which was independent of the legitimate operations of the licensed massage parlor. (**See** appellant's brief at 15-22.)

Our review of the record, however, reveals that appellant answered the phone connected to the backpage.com advertisements, which advertisements included pictures of scantily clad women, some of whom were posed on beds. Additionally, appellant controlled Officer Yim's entry into 1123 Race Street. While appellant was taking Officer Yim to Room No. 2, the two passed other rooms, each of which contained a bed – not a massage table. They also passed a shower room. Appellant told Officer Yim that she would bring him a "nice girl". To that end, she brought him Ms. Wang who was dressed in

nothing else but a black bra and black underwear, as were two other women who were walking back and forth in the hallway. As appellant, Officer Yim, and Ms. Wang stood in the bedroom referred to as "Room No. 2," neither appellant nor Ms. Wang asked Officer Yim what kind of massage he wanted and neither provided him with massage-service options; in fact, the record demonstrates that massages were never discussed. After appellant left Ms. Wang and Officer Yim in the bedroom referred to as "Room No. 2," Ms. Wang showered Officer Yim, had him lay on the bed, removed her clothes, and then attempted to place a condom on his penis. Additionally, after backup arrived, the officers' search of the property resulted in the confiscation of, among other things, more than 1,000 condoms, together with a variety of lubricants.

This evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to prove beyond a reasonable doubt that appellant committed the crime of promoting prostitution.[5]

Appellant next contends that the evidence was insufficient to convict her of conspiracy to promote prostitution because it failed to show that she

---

[5] We note that contrary to appellant's assertion, the facts of this case are not analogous to those in **Commonwealth v. DeStefanis**, 658 A.2d 416 (Pa.Super. 1995), wherein we found the evidence insufficient to sustain defendant's promoting prostitution conviction because it demonstrated that a legitimate massage was given for a stated price and that one masseuse offered a "hand release" for an additional tip. Here, the record demonstrates that no massage was offered for any price and no "hand release" was offered for an additional tip.

solicited Ms. Wang and/or Officer Yim to engage in a sex act for money; it failed to establish that she ever discussed prostitution with either one of them; and that if any act of prostitution was committed, it was Ms. Wang's independent act. (*See* appellant's brief at 22-26.)

Pursuant to the Crimes Code, conspiracy is defined as follows:

**§ 903. Criminal conspiracy**

**(a) Definition of conspiracy.--**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

    (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

    (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

A conviction for criminal conspiracy, 18 Pa.C.S.A. § 903, is sustained where the Commonwealth establishes that the defendant entered an agreement to commit or aid in an unlawful act with another person or persons with a shared criminal intent and an overt act was done in furtherance of the conspiracy.

The essence of a criminal conspiracy is the common understanding that a particular criminal objective is to be accomplished. Mere association with the perpetrators, mere presence at the scene, or mere

knowledge of the crime is insufficient. Rather, the Commonwealth must prove that the defendant shared the criminal intent, *i.e.*, that the Appellant was "an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement." The defendant does not need to commit the overt act; a co-conspirator may commit the overt act.

A conspiracy is almost always proved through circumstantial evidence. "The conduct of the parties and the circumstances surrounding their conduct may create 'a web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt." The evidence must, however, "rise above mere suspicion or possibility of guilty collusion."

> Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super.2002) (*en banc*) (citations omitted). *See also Commonwealth v. Finnegan*, 421 A.2d 1086 (Pa. Super. 1980) (affirming conviction of conspiracy where the defendant arranged the meeting of an undercover officer with a prostitute).

Here, while Officer Yim may not have heard any direct communication between appellant and Ms. Wang about engaging in sexual activity for profit,

the conduct of appellant and Ms. Wang and the circumstances surrounding their conduct created "a web of evidence" linking appellant to the conspiracy to promote prostitution beyond a reasonable doubt. The association between appellant and Ms. Wang was demonstrated by appellant's bringing Ms. Wang, dressed only in a bra and underwear, to Officer Yim, which came about as the result of 25 advertisements placed in backpage.com over a 72-hour period featuring scantily clad women, some posed on beds. Additionally, appellant's knowledge of the commission of the underlying crime of promoting prostitution was established by, among other things, her answering the phone connected with the backpage.com advertisements; her controlling appellant's entrance into the property; her taking appellant to a bedroom; her bringing Ms. Wang, who was dressed in a bra and underwear, to Officer Yim; and her failure to discuss legitimate massage services and corresponding prices with Officer Yim. Appellant was also present and working at 1123 Race Street where the crime of promoting prostitution took place. Moreover, the seamless nature of appellant's conduct from the time she answered Officer Yim's telephone inquiry until the time she left Officer Yim in the bedroom with Ms. Wang was circumstantial evidence of an agreement between appellant and Ms. Wang that Ms. Wang would perform sexual activity for monetary compensation. Therefore, the evidence was sufficient to find appellant guilty of criminal conspiracy.

With respect to appellant's conviction for criminal solicitation, the Commonwealth notes that, although not raised by appellant,

> [appellant] should not have been sentenced for both conspiracy and solicitation stemming from "conduct designed to . . . culminate in the commission of the same crime." 18 Pa.C.S.[A.] § 906. As [appellant's] solicitation and conspiracy convictions both arise from her request that Ms. Wang have sex with Officer Yim, her [judgment] of sentence for solicitation should be vacated. *See Commonwealth v. Kingston*, 143 A.3d 917, 923 (Pa. 2016) (explaining that when a solicitation evolves into a conspiracy, the defendant can be punished for only one). But because [appellant] was sentenced to concurrent sentences for her conspiracy and solicitation convictions, no remand is necessary. *See Commonwealth v. Woods*, 575 A.2d 601, 606 (Pa.Super. 1990) (vacating one of Woods's inchoate convictions under Section 906, but declining to remand for resentencing because that conviction ran concurrently to his other inchoate conviction).

Commonwealth's brief at 14.

As noted by the Commonwealth, appellant did not raise this issue on appeal. As the issue implicates the legality of appellant's sentence, it is a non-waiveable issue, and we may address it *sua sponte*. *Commonweath v. Springer*, 961 A.2d 1262, 1264 n.3. (Pa.Super. 2008).

Section 906 of the Crimes Code prohibits multiple convictions of inchoate crimes. 42 Pa.C.S.A. § 906 ("[a] person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime").

Here, the trial court improperly convicted appellant of two inchoate crimes; specifically, criminal solicitation and criminal conspiracy, the underlying conduct of which was designed to promote prostitution. Therefore, Section 906 permits only one of those convictions to stand. *See* 42 Pa.C.S.A. § 906. Pursuant to 42 Pa.C.S.A. § 706, we have the option to remand for resentencing or to modify the sentence directly. *See* 42 Pa.C.S.A. § 706 ("[a]n appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review . . . ."). Because the trial court sentenced appellant to three concurrent three-year probationary terms, we will amend appellant's sentence, as doing so will not upset the trial court's sentencing scheme. The judgment of sentence for criminal solicitation, which was to run concurrently with the judgments of sentence for promoting prostitution and criminal conspiracy, is vacated.

Conviction of criminal solicitation reversed. Judgment of sentence for criminal solicitation vacated. Judgments of sentence for promoting prostitution and criminal conspiracy affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/2/19

- 15 -