J-A04036-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| POK SUN CHANG | : | |
| | : | |
| Appellant | : | No. 248 EDA 2018 |

Appeal from the Judgment of Sentence November 8, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008605-2016

BEFORE:   LAZARUS, J., KUNSELMAN, J., and COLINS*, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 26, 2019**

Pok Sun Chang appeals from the judgment of sentence, imposed in the Court of Common Pleas of Philadelphia County, after being convicted, following a bench trial, of promoting prostitution and conspiracy.[1]  For the reasons set forth herein, we vacate Chang's judgment of sentence.

On August 17, 2016, Chang was arrested by Philadelphia police at the "Pink Spa," located at 1207 Race Street in Philadelphia, and charged with the aforementioned offenses.[2]  On November 21, 2016, Chang filed a motion to suppress, challenging her arrest as violative of the Fourth Amendment of the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution.

---

[1] 18 Pa.C.S.A. §§ 5902(b)(1) and 903, respectively.

[2] Chang was also initially charged with solicitation, 18 Pa.C.S.A. § 902.  At a hearing on October 27, 2016, the trial court granted Chang's motion to quash this charge.

\* Retired Senior Judge assigned to the Superior Court.

The suppression court held a hearing on the motion to suppress on June 19, 2017, at the conclusion of which it denied relief.

Trial occurred on August 31, 2017. Philadelphia Police Officer James Kearney testified that, on August 16 or 17, 2016, he visited the Backpage website and saw an advertisement for massage services at the Pink Spa. N.T. Trial, 8/31/17, at 9-12, 24. The advertisement included a phone number, photographs of young Asian women in lingerie, and a photograph of a sign that said "Pink, ring bell." *Id.* at 12-14; Commonwealth Ex. C-1. Officer Kearney testified that, based on his eleven years of experience working in the vice unit on numerous prostitution investigations, he believed this advertisement was for prostitution services. N.T. Trial, 8/31/17, at 8-9, 15.

Officer Kearney testified that he called the telephone number on the online advertisement and spoke to a woman who informed him that no appointment was necessary and he could come in anytime. *Id.* at 16. On August 17, 2016, Officer Kearney went to the Pink Spa and rang a bell next to the "Pink, ring bell" sign, which was identical to the sign in the advertisement. *Id.* at 16-17. Chang opened the door and asked Officer Kearney if he had ever been to the establishment before. *Id.* at 17. Officer Kearney stated that he did not believe that he had previously been there, and Chang then led Officer Kearney through the "living room area" towards a room marked number 5. *Id.*

Officer Kearney testified that he then asked Chang "[h]ow much is it," without specifying any particular type of massage or other service. *Id.* at 17,

20. Chang responded $160. *Id.* at 17. Officer Kearney asked if he should pay Chang, and Chang responded "no" and that he should give the money to "the girl." *Id.* at 18. Officer Kearney asked if there was more than one girl to choose from, and Chang then presented him with two young women, Miss An and Miss Kim.[3] *Id.* Officer Kearney selected Miss An, who led him into room number 5. *Id.*

Officer Kearney testified that, once inside the room, Miss An informed him "it was $160" and told him to get undressed. *Id.* Officer Kearney paid Miss An $160 and she then left the room for several minutes; when she returned she asked Officer Kearney if he wanted a table shower. *Id.* Officer Kearney responded in the affirmative. *Id.* Officer Kearney testified that Miss An led him into the shower room, where she took off her lingerie top and gave him a "full body shower head to toe." *Id.* at 19. Officer Kearney testified that once the shower was completed, she dried him off and led him back into room number 5, where she told him to lay down on his stomach. *Id.* Miss An then rubbed his back for several minutes before asking him to roll over. *Id.* At this point, which was approximately 20 to 30 minutes into their interaction, Officer Kearney asked Miss An "are we going to have sex now," to which Miss An responded yes. *Id.* at 19, 45. Officer Kearney then asked Miss An "[d]o I have to give you any[ ]more money," to which Miss An responded no. *Id.* Officer Kearney then informed Miss An that he would need to use the

_____

[3] Miss An and Miss Kim were not identified by their full names at trial.

bathroom, at which point he surreptitiously notified his backup officers to enter the Pink Spa and arrest Chang and Miss An. *Id.* at 19, 46.

At the conclusion of trial, the trial court found Chang guilty of promoting prostitution and conspiracy. On November 8, 2017, following a hearing, the trial court sentenced Chang to five years of probation on the promoting prostitution charge and no further penalty as to the conspiracy charge. Chang filed a post-sentence motion, which the trial court denied on December 14, 2017. This timely appeal follows.[4]

Chang challenges the sufficiency of the evidence supporting her convictions for promoting prostitution and conspiracy. Our standard of review when considering a challenge to the sufficiency of the evidence is well-settled:

> A claim challenging the sufficiency of the evidence presents a question of law. We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict."
>
> Our Supreme Court has instructed: [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in

---

[4] The trial court did not request that Chang file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On February 20, 2018, the trial court informed this Court that the judge who presided over the trial and sentencing was no longer a sitting judge and, therefore, no opinion would be issued.

- 4 -

applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

In addition, "[t]he Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant."

*Commonwealth v. Orie*, 88 A.3d 983, 1013-14 (Pa. Super. 2014), quoting

*Commonwealth v. Williams*, 73 A.3d 609, 617 (Pa. Super. 2013).

Chang was convicted of promoting prostitution and conspiracy. Section 5902(b)(1) of the Crimes Code provides:

A person who knowingly promotes prostitution of another commits a misdemeanor or felony as provided in subsection (c) of this section. The following acts shall . . . constitute promoting prostitution:

(1) owning, controlling, managing, supervising or otherwise keeping, alone or in association with others, a house of prostitution or a prostitution business[.]

18 Pa.C.S.A. § 5902(b)(1). A "house of prostitution" is defined by the statute as "[a]ny place where prostitution or promotion of prostitution is **regularly carried on** by one person under the control, management or supervision of another." 18 Pa.C.S.A. § 5902(f) (emphasis added). While not defined in the statute, this Court has previously characterized a "prostitution business" as one that involves the payment of money in exchange for sexual stimulation. *See Commonwealth v. DeStefanis*, 658 A.2d 416, 420 (Pa. Super. 1995) ("[I]n order for there to be prostitution, there must not only be sexual activity

. . ., but a payment of money as well, in other words, "a prostitution business.").

Criminal conspiracy requires proof that a person: (1) entered into an agreement to commit or aid in an unlawful act with another person or persons; (2) with a shared criminal intent; and (3) that an overt act was done in furtherance of the conspiracy. *Commonwealth v. Johnson*, 719 A.2d 778, 785 (Pa. Super. 1998) (en banc). A conspiracy may be established with circumstantial evidence, such as the interaction between the parties and the context of their actions. *Commonwealth v. Bricker*, 882 A.2d 1008, 1017 (Pa. Super. 2005). This Court has identified factors to be considered when analyzing whether a conspiracy has been proven:

> Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002) (citations omitted).

Chang argues that the Commonwealth did not establish that prostitution was "regularly carried on" at the Pink Spa such that it could be considered a "house of prostitution" as defined in section 5902. Chang asserts that the Commonwealth also failed to prove that there was a "prostitution business"

under the statute because any understanding between Miss An and Officer Kearney that they would have sex was separate and apart from the service purchased and ancillary to the actual business of the Pink Spa. Chang further argues that the evidence showed that she was a low-level employee at the Pink Spa rather than the owner or manager of the establishment.

In support of her claim, Chang relies on **DeStefanis**, **supra**, and **Commonwealth v. Blankenbiller**, 524 A.2d 976 (Pa. Super. 1987). In **DeStefanis**, a male undercover officer went to a fitness center and paid for a body massage, at the conclusion of which the massage therapist asked him if he wanted a "hand release," which he understood to be a manual stimulation of the genitals. **DeStefanis**, 658 A.2d at 417. The officer inquired as to the price of a hand release and was informed that "a tip would be appreciated." **Id.** The same officer returned again and asked another therapist for other sexual services and was informed that there was a house rule that only hand releases were available. **Id.** Several months later, a female undercover officer interviewed for a massage therapist position with DeStefanis, the owner of the fitness center. **Id.** The female officer asked DeStefanis if "he had a problem with" her performing a hand release during a massage, and DeStefanis stated it was up to her if she wanted to make more money, but he did not think "anybody's doing that." **Id.** at 417-18. DeStefanis also reiterated numerous times during the interview that no sexual intercourse was permitted and he would be monitoring her closely. **Id.** at 418.

We concluded in **DeStefanis** that there was insufficient evidence of a prostitution business to support the defendant's conviction for promoting prostitution because no price was attached to the hand release and the only discussion of compensation for this service was the vague statement that a tip would be appreciated. Thus, there was no basis for a conclusion that the hand release was included in the price of the massage. We further determined that DeStefanis' statement to the female officer posing as a job applicant that she could perform hand releases for extra tips did not establish that the defendant was engaged in the "business" of prostitution. Finally, we stated that, even assuming there was a prostitution business, there was no evidence that the defendant promoted that business because there was no evidence that he received income from such a business.

In **Blankenbiller**, a fund-raising party was held at a recently closed restaurant to benefit the restaurant's softball team. A $15 ticket was required for admission and entitled the purchaser to beer, snacks and a go-go dancer show. During the party, regular announcements were made "to the effect that sex was available for money." **Blankenbiller**, 524 A.2d at 977. Testimony elicited at trial indicated that four prostitutes were performing "tricks" during the party and $5 per trick was collected from the prostitutes, which money also went to benefit the softball team. The evidence presented against Blankenbiller, the defendant charged with promoting prostitution, was that he: was the president of the company that owned the restaurant; had financially supported the softball team; had promoted the party; had sold at

least one ticket; and was seen in close proximity to the speaker system when the announcements were made that sex was available for money.

We concluded that, while there was no question that a prostitution business was operating during the party, the Commonwealth had not established that the defendant had any involvement in promoting it. In particular, we noted that there was no evidence presented that Blankenbiller received any income from the business, told anyone that prostitutes would be available at the party, or arranged for the prostitutes to be present at the party.

In light of **DeStefanis** and **Blankenbiller**, we are constrained to agree with Chang that the Commonwealth failed to present sufficient evidence to prove, beyond a reasonable doubt, that Pink Spa was a prostitution business or that Chang had a connection with the running, control, supervision or keeping of such a business. As in **DeStefanis**, there was no price attached to the sexual activity and Chang, herself, never discussed sexual activity with Officer Kearney. As we noted in **DeStefanis**:

> Arguably, when a client does not agree to pay for a sexual service *up front*, the ensuing act constitutes sexual activity between two consenting adults. Ms. Grama, Detective Carroll's second masseuse, did not even make Detective Carroll an offer of any type of sexual activity; **it was not until the massage was completed and Detective Carroll initiated inquiries to Ms. Grama about sexual options that she spoke about hand releases**. There can be no assumption, therefore, that a hand release was included in the price of the massage.

**DeStefanis**, 658 A.2d at 420 (emphasis added).

Here, no sexual activity was discussed until Officer Kearney raised the topic with Miss An, approximately 20 to 30 minutes into his visit. As such, there is no basis to assume that sex was included in the original price of the massage. Nor, on the evidence presented at trial, is there any basis to conclude that Chang knew that Miss An would agree to provide sexual services to Officer Kearney.

Even if Miss An could be considered to have been engaged in the business of prostitution, there was no proof that Chang was involved in the "owning, controlling, managing, supervising or otherwise keeping" of the business. The Commonwealth presented no evidence that Chang knew of Miss An's activities or benefitted financially from them. Indeed, Chang declined to accept payment from Officer Kearney and, instead, directed him to pay Miss An.[5] The Commonwealth also failed to produce any evidence that Chang had an ownership interest in the business, or that she controlled its operations, or even that she was an employee of the business.[6] Rather, the evidence adduced at trial demonstrated merely that Pink Spa advertised massage

_____

[5] The pre-recorded money Officer Kearney paid to Miss An was never recovered, either in Chang's possession or otherwise.

[6] In **DeStefanis**, the Commonwealth presented evidence that the defendant set the "rules" for masseuses, did not object to his employees providing "hand releases," and was responsible for hiring decisions. Nevertheless, despite the existence of substantially more evidence than that presented in the instant matter, this Court found the evidence insufficient to prove DeStefanis had a connection with running, controlling, supervising, or otherwise keeping a prostitution business, especially given the lack of evidence that he received income from such business. **See DeStefanis**, 658 A.2d at 420-21.

- 10 -

services on the internet, that Chang admitted Officer Kearney to the premises and introduced him to Miss An, and that Officer Kearney received massage services up until the moment that he—not Miss An and certainly not Chang—raised the topic of sexual activity. This evidence was simply insufficient to satisfy the Commonwealth's heavy burden of demonstrating guilt beyond a reasonable doubt.

The Commonwealth argues that "Officer Kearney's testimony that Ms. An agreed to have sex with him after accepting money was sufficient to establish the existence of a prostitution business."[7] Brief of Appellee, at 12. In support of that contention, the Commonwealth relies upon **Commonwealth v. Chon**, 983 A.2d 784 (Pa. Super. 2009), and **Commonwealth v. Potts**, 460 A.2d 1127 (Pa. Super. 1983). In **Potts**, a vice squad detective responded to an advertisement for "Companions for all occasions" and requested the male on the other end of the line to send a girl to his hotel room. When the girl arrived, the detective requested sexual intercourse and she quoted him a price. The transaction was aborted when the detective was unable to produce his wallet. Approximately one week later, the detective made a second call to the same number and again requested the male on the other end of the line to send a girl to his hotel room. When

---

[7] The Commonwealth argues that the presence of "televisions, surveillance cameras, a credit card machine, towels, lotions and oils" on the premises supports an inference that prostitution was regularly conducted at Pink Spa. Brief of Appellee, at 14 n.4. In fact, the presence of these items is no more indicative of a prostitution business than they are of a massage spa.

the girl, Potts, arrived at the room, she checked the detective's identification. After supplying the requested information, the detective asked Potts "what he would get for his money;" she responded, "It will cost seventy dollars for the escort service." *Potts*, 460 A.2d at 1131. The detective then asked, "What else do I get for my money?" Potts responded that, for another $70, he could get "whatever he wanted," including oral sex. *Id.* The detective paid Potts and, once both of them had removed their clothing, revealed his true identity and arrested her. She was subsequently charged and convicted of prostitution and conspiracy.

*Potts* is factually distinguishable from the instant matter. There, when he asked what he would get for his money, the undercover detective was explicitly told, prior to paying, that he would receive sexual services. In the matter *sub judice*, there was no discussion of sex whatsoever until long after Officer Kearney paid for the massage services advertised and received such services. Only then did he request sex, for which Miss An did not charge an additional fee. As in *DeStefanis*, there was no price attached to the sexual services and there could be "no assumption, therefore, that [sex] was included in the price of the massage." *DeStefanis*, 658 A.2d at 420.

Similarly, *Chon* is entirely inapposite. There, this Court addressed a challenge by the Commonwealth to the trial court's grant of a motion to dismiss charges of prostitution and promoting prostitution due to outrageous government conduct. Because of the procedural posture of the case, the Court in *Chon* did not have occasion to consider the quantum or quality of evidence

necessary to sustain a conviction for promoting prostitution. The Commonwealth's reliance on that case is limited to a single sentence of *dicta*, excerpted from the trial court's opinion, speculating that "[t]he mere agreement to perform sexual acts for money would have satisfied the statute[.]" **Chon**, 983 A.2d at 789. Even if that statement were not *dicta*, as we have already discussed **supra**, instantly, there was no agreement to perform sexual services for money. Accordingly, **Chon** is of no moment.

Finally, the Commonwealth relies on **Commonwealth v. Dobrinoff**, 784 A.2d 145 (Pa. Super. 2001), to support its assertion that the evidence established that Chang promoted the prostitution business. In **Dobrinoff**, the evidence established the following:

> [A]t Fantasies, a club owned by Appellant, sex was occurring in the back room. For example, Detective Garver and Trooper Longenecker testified that sex was offered to them in the back room, and both officers indicated that the club manager was aware of the activity. Moreover, Trooper Longenecker testified that, while in Fantasies, he saw an advertisement for an exotic maid service, and the telephone number on the advertisement was registered to Appellant's residence. When Trooper Longenecker called the number, Appellant answered, indicated that he was the owner of the service, and quoted a price of $150.00 per hour plus tips. Appellant then told Trooper Longenecker to pay at Fantasies, and, as a result of following Appellant's dictates, Trooper Longenecker engaged in sexual activity with a prostitute.

*Id.* 148.

Unlike in the instant matter, in **Dobrinoff**, the Commonwealth demonstrated that the appellant actually owned one business enterprise— "Fantasies"—in which sexual acts were being performed in exchange for

- 13 -

money.  In addition, the evidence showed that appellant also owned a second enterprise—the "maid service"—from which the officer procured sex, and for which payment was made at the appellant's first business, "Fantasies."  In contrast, here, the Commonwealth presented no evidence whatsoever regarding the nature of Chang's role at Pink Spa or that she benefitted financially from the business.

In sum, we conclude that the evidence presented by the Commonwealth failed to establish either that Pink Spa was a prostitution business or that Chang owned, controlled, managed, supervised or otherwise kept such a business.  Because we determine that the Commonwealth presented insufficient evidence to sustain Chang's convictions, we need not consider the remaining issues she has raised on appeal.

Judgment of sentence vacated; appellant discharged.  Jurisdiction relinquished.

Judge Kunselman joins this Memorandum.

Judge Colins files a Dissenting Memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/26/19

- 14 -